DANIEL F. COMSTOCK ET AL. v. CASPER M. SANGER ET AL.

*Contract— Waiver of exact performance.*

A contract was made for about 800,000 feet of lumber, including stated quantities of special sizes. The number of feet bargained for was delivered, but there was a great deficiency in the special sizes, and the purchaser's agent continued to receive lumber from the other parties, in the hope that the deficiency might be made up, until the amount received exceeded the amount bargained for by about 135,-000 feet, and the deficiency, even then, was as much more. The agent made no objection to receiving the surplus quantity, but did object to paying for it at the rates agreed on, and the vendors offered to abate the price 50 cents a thousand, to which he made no answer. *Held,* that there was conclusive evidence of a compromise, and of a waiver of the right to the remainder of the special sizes; that, as to the contract quantity, the vendors were entitled to the contract price, and as to the excess, to what they had offered to take, if that was its value.

The act of a contract purchaser in receiving without protest what is delivered under the contract to the amount bargained for, amounts to a waiver of any difference in quality between what he had a right to demand and what he has actually received.

In an action to recover for goods sold, their value must govern, in the absence of any agreement as to price.

Error to Muskegon. (Russell, J.)   Oct. 3–4.—Oct. 17.

ASSUMPSIT.   Defendants bring error.   Affirmed.

*Keating & Dickerman* and *Markham & Noyes* for appellants. Receipt of goods is different from acceptance (Benj. Sales § 703) which must be proved by unequivocal acts of the buyer: *Knight v. Mann* 118 Mass. 143 ; 2 Ad-

dison on Cont. § 1218; acceptance and appropriation do not waive damages for breach of contract of sale: *Trowbridge v. Barrett* 30 Wis. 661; *Allen v. McKibbin* 5 Mich. 449; *Henkel v. Welsh* 41 Mich. 664; *Hull v. Belknap* 37 Mich. 179.

*Norris & Uhl* for appellee.

COOLEY, J. Assumpsit to recover the price of lumber sold. On August 26, 1881, Mr. Chauncey Pettibone, as agent for the defendants, entered into a contract with the plaintiffs, of which they gave him the memorandum copied in the margin.*

The plaintiffs commenced making delivery on the contract, and prior to October 4, 1881, had delivered upwards of 400,000 feet of lumber in Milwaukee, and sufficient in Muskegon to make up a total of 759,623 feet. Mr. Pettibone had attended to the receipt of the lumber at Muskegon, and tally sheets had been given, showing the quantity of the several sizes. It will appear that only a fraction over 40,000 feet was then required to make up 800,000 when, on the day last named, a vessel, the R. P. Mason, was waiting at Muskegon to be loaded.

But though the whole quantity was so nearly supplied, it

---

\* MUSKEGON, August 26th, 1881.

*Messrs. Sanger, Rockwell & Co., Milwaukee, Wis.*—GENTLEMEN: Sold you to-day two cargoes of lumber, of about four hundred thousand feet each into which we will put 100 pcs. 8x8-14; 50 pcs. 8x8-16; 40 pcs. 8x10-18; 30 pcs. 8x10-16; 40 pcs. 8x10-18; 20 pcs. 10x10-12; 40 pcs. 10x10-14; 60 pcs. 10x10-16; 40 pcs. 10x10-18; 30 pcs. 10x10-20; 30 pcs. 10x10-22; 20 pcs. 12x12-12; 20 pcs. 12x12-14; 10 pcs. 12x12-16; 20 pcs. 12x12-18; 30 pcs. 12x12-20; 30 pcs. 12x12-22; 200 pcs. 2x12-18; 500 pcs. 2x12-22; 500 pcs. 2x12-24; 200 pcs. 2x12-26; 400 pcs. 2x6-22; 400 pcs. 2x16-26; 200 pcs. 2x16-28; 10 pcs. 10x12-12; 10 pcs. 10x12-14; 10 pcs. 10x12-16; 10 pcs. 10x12-18; 40 pcs. 10x12-20; 40 pcs. 10x12-22; 3500 pcs. 2x4-18; 1000 pcs. 2x4-20. Should we be unable to furnish the amount of 2x12-24 named, we will furnish you same amount cut to other sizes as you may wish. Will ship one cargo within ten days and the second within thirty days. Lumber to be sound merchantable lumber excluding lengths under ten feet. Lumber to be inspected and tallied by W. McCullum. The price of first cargo to be $11, delivered to you in Milwaukee, and of the second $9.50, on dock here. Terms of sale cash. Provided we are unable to furnish the exact number of pieces of lengths above 20 no damage shall accrue, but in any event we will furnish 75 per cent. of each kind named.      D. F. COMSTOCK & Co.
     We are to pay ¼ tally on this lot.    PETTIBONE.

is shown that of the special sizes mentioned in the contract much more than 40,000 feet had not been delivered. These sizes were of more value than the ordinary run of the lumber, and were not always readily obtainable ; and much lumber of unusual sizes, but not corresponding to the sizes specified in the contract, appear to have been delivered from time to time without objection by either party, and without any expressed understanding respecting them.

When the R. P. Mason commenced to load, then, the situation was this : The whole quantity was delivered, with the exception of about 40,000 feet, and the delivery of special sizes was so far short that if the whole 40,000 should be of those sizes there would still be a large deficiency. It might be expected, therefore, that if defendants proposed to insist upon literal compliance with the contract, they would then decline to receive any lumber not of the special sizes. So far were they from doing this, that the R. P. Mason was loaded with lumber as it was convenient to take it from piles on the dock, and the load swelled the total receipts to 934,557 feet. This was done under the supervision of Pettibone, who appears to have endeavored to obtain what he could of the special sizes, but made no protest against receiving other lumber. The quantity of the special sizes then deficient was about 135,000 feet, according to Pettibone's estimate.

When the vessel was loaded, Pettibone called the attention of the plaintiffs to the fact that the quantity taken largely exceeded that which defendants had bargained for, and he claimed that for the excess over 800,000 feet the defendants ought not to pay the contract price. Plaintiffs, according to their evidence, then agreed with him that the price for this excess should be nine dollars a thousand feet, while, according to his evidence, plaintiffs proposed to take nine dollars and he made no response. Pettibone's evidence on the subject is as follows : " The captain fixed the loading himself. After the loading of the R. P. Mason on one of the docks,—I can't say whether it was before or after I received the tally sheets ; I should say it was before,—I stated to Mr. Comstock, in substance, that if, in order to get in the

amount of those special sizes that he had contracted to furnish us, there was evidently a good deal of other lengths that got in, that would swell the total to a great deal more than the 800,000 feet, and that we didn't want them at the same price : that piece stuff was lower. Comstock admitted the fact that there would be more than 800,000 in order to secure the special sizes that we wished, and said that he would allow us half a dollar. That was his offer. I made no reply to that. I did not accept his proposition. I wouldn't swear that at that particular time it was spoken of about his furnishing the balance of the piece stuff named in the contract."

Plaintiffs claim that performance on their part was completed when the R. P. Mason was loaded, and that they were entitled to the contract prices for 800,000 feet, and nine dollars a thousand for the excess, under their agreement with Pettibone. Defendants denied that they had agreed through Pettibone upon the price for the excess, but insisted upon their right to receive the 135,000 feet of special sizes which were deficient. Evidence was put in of attempts by plaintiffs to obtain payment of the balance due them, according to their claims, and by defendants to secure the special sizes of lumber; all of which proved ineffectual. It was shown that plaintiffs made some effort afterwards to procure the special sizes for defendants without avail; but whether this was in recognition of a right in defendants to receive them, or merely to avoid litigation, was made a question. The circuit judge submitted the evidence on this subject to the jury, expressing his own opinion, however, that neither party was shown to have done anything after the R. P. Mason loaded which would constitute a waiver of rights. At the request of the plaintiffs he gave the following instructions :

"If the jury find that when the R. P. Mason was loaded it was discovered that her load, with what had before that been received by the defendants, exceeded the 800,000 feet mentioned in the contract by 135,536 feet, as per the tally sheets, and that thereupon the agent of the defendants, Mr. Pettibone, objected to paying the contract price of nine dollars and fifty cents upon such excess, as it exceeded the amount contemplated by the contract, and it was then

and there agreed between the said Pettibone and plaintiff Chester W. Comstock, as a compromise and adjustment touching the lumber received and agreed to be received under the contract, that such excess of 135,536 feet should be charged at nine dollars per thousand only, then, although the entire amount of 935,536 feet actually received by the defendants, and by them appropriated to their own use, was not, in every respect, sawed into the particular lengths and sizes specified in the contract, the defendants will not be allowed to recoup by reason thereof, but will be held to pay for the lumber so received and retained by them.

"The contract provided that out of the 800,000 feet contracted to be sold a certain portion should be cut into certain specified sizes and lengths, and it was the privilege of the defendants to insist upon strict compliance therewith or to waive the same. It was their privilege, as the lumber was delivered to them from time to time on the dock, to refuse to receive any portion that did not satisfy the contract; and if, with every opportunity afforded to inspect the same, and if, when the last cargo was loaded, they had full knowledge that the entire quantity contemplated by the contract would be thereby received, and that there was an excess of certain sizes and lengths and a shortage as to other sizes and lengths, and they saw fit to accept the same in satisfaction of the contract, they cannot recover on account of such shortage."

It is contended on the part of the defense that there was no evidence in the case which warranted submitting to the jury the question of compromise as the judge submitted it, and no evidence showing any waiver by defendants of their right to the remainder of the special sizes. We think there not only was such evidence, but that it was so conclusive in its nature that but one deduction could be made from it.

It is true that in the talk between Pettibone and the plaintiffs after the loading of the R. P. Mason, the word "compromise," or perhaps any equivalent word, is not shown to have been made use of; but what they were speaking of is seen to have been a delivered surplus above the contract quantity, and it is only in respect to this that there is any allusion to an open question. The 800,000 feet had been delivered and received; it did not in all respects comply with the contract, but it had nevertheless been taken

without, so far as appears, any protest or any reservation of
a right to question afterwards its having been received
under the contract. A large excess had also been received;
and Pettibone claimed that this had happened because they
would not otherwise get the special sizes the contract called
for. For this reason, and also because, as he said, there had
been a decline in prices, he insisted there should be an
abatement. But it does not appear that any excess was in
the mind of either party except the existing excess over
800,000 feet, nor did Pettibone at the time put forward a
claim to the special sizes not yet delivered. If those special
sizes were still to be received, the existing large excess
would be doubled; and there would be the same reason for
making a deduction for the added excess as for that already
had. But nothing said by either party at this time gives
any indication that either of them had in mind any increase
to take place afterwards in the existing excess.

It appears, then, that the full contract quantity had been
delivered by plaintiffs, and been received by defendants
under the supervision of defendants; and though the special
sizes did not correspond to those specified in the contract,
there had been no protest against the receipt, and no res-
ervation of a right to object afterwards to any of it. When
the final load was taken, defendants, by their agent, did
complain that an excess had been thrown upon them, in con-
sequence of the practical difficulty in reaching the special
sizes in any other way; and, in respect to this excess, an
abatement in price was insisted upon as reasonable. No
further claim was then made, and, so far as the evidence
goes, there was nothing to then apprise the plaintiffs that
defendants disputed having received any part of the 800,000
feet of lumber under the contract.

But even if defendants had then insisted, at that time,
upon a right to further delivery of special sizes of lumber,
we see no ground on which they could have been entitled to
it. They had already received the full quantity, and any
difference between what they had a right to demand and
what they had actually received was waived by the recep-

tion without protest. This is a rule of justice as well as of law. *Parker v. Palmer* 4 B. & Ald. 387; *Chapman v. Morton* 11 M. & W. 534; *Reed v. Randall* 29 N. Y. 358; *Gaylord Manuf'g Co. v. Allen* 53 N. Y. 515; *Barton v. Kane* 17 Wis. 37 : 18 Wis. 262; *Watkins v. Paine* 57 Ga. 50. The contract in law had been complied with; and though the performance was not exact, it had been accepted. If the jury had found otherwise, it would have been the duty of the court to set aside their verdict as unwarranted.

As to the excess over 800,000 feet, it is of no importance in this case whether Pettibone did or did not agree to the price the plaintiffs named, as it appears without dispute the lumber was worth that price; and, in the absence of any agreement upon price, the value must govern.

This view of the case disposes of it, and the judgment must be affirmed with costs.

The other Justices concurred.