S. W. MAXWELL *vs.* J. W. LEE and another.

February 17, 1886.

**Executory Sale of Logs — Words of Description Held to Import Condition and not Warranty—Waiver by Acceptance.—** M. and L. entered into a contract by which M. was to cut and bank a certain quantity of "good, smooth, sound" logs, which were to be subject to the approval of L. on inspection when "banked."   If approved, M. was to drive them into booms.   L. was to pay M. $6.25 per 1,000 feet, payable $1 when banked, on inspection and approval, in lots of 50,000 feet; $1 when all banked; $1 when all in boom; $1 when stumpage became due; and $2.25 November 1st, following.   A settlement was to be had at the end of "the logging season," when L. was to give M. a due-bill for amount due on the last payment.   L. was to advance M. $100 in supplies, which was to be refunded in case the logs, on inspection, did

not receive the approval of L. M. cut and banked the logs, and at the end of the "logging season" had a settlement with L., at which L. gave him a due-bill for balance due on last payment. M. then drove the logs into boom, where they were received by L., and sawed into lumber. L. made no objection to the quality of the logs until after he had received them all, and while he was sawing them, when, for the first time, he informed M. that they were unsound, and not of the quality contracted for. It does not appear whether or not he actually inspected and expressly accepted the logs when "banked;" but there is nothing to show that he was deprived of an opportunity to do so, or that there was any understanding that the inspection should be postponed to any other time or place, or that this unsoundness was not visible and apparent on mere ordinary observation, or that there was any misrepresentation or concealment by M. as to quality. *Held*, that while words of a description may amount to a warranty of quality, if it appears that they were so intended by the parties, yet in this case the entire contract shows that the parties intended merely a "sale by description;" that the words descriptive of the quality of the logs, while constituting a *condition* to be performed by the vendor, were not intended as a warranty which should survive the acceptance of the property by the vendee; that it was L.'s duty to inspect the logs on the bank, and then determine whether or not he would approve the quality; that, even if he omitted to do so, he must, on the facts of this case, be deemed, by his conduct, culminating in an acceptance of the property without objection, to have acquiesced in its quality as being in accordance with the contract.

Appeal by defendants from an order of the district court for Hennepin county, *Young, J.*, presiding, refusing a new trial.

*Rea, Kitchel & Shaw*, for appellants.

*Hart & Brewer*, for respondent.

MITCHELL, J. The plaintiff brings this action to recover the balance of the contract price of a quantity of logs sold and delivered to defendants. Defendants, by way of counterclaim, allege that the logs delivered were unsound, and not of the quality agreed on, and ask to recoup their damages against the claim of plaintiff. The contract between the parties was drawn rather inartificially, and without much regard to the order of time; but, according to our construction, its terms were as follows: Plaintiff was, during the logging season of 1883–84, to cut and bank on Bradbury brook 500,000 feet or more of "good, smooth, sound" logs. These logs were to be subject to the in-

spection and approval of defendants when "banked." If approved on such inspection, the plaintiff was then to drive them into the boom of the Mississippi & Rum River Boom Company. The defendants were to pay plaintiff $6.25 per thousand feet, payable as follows: $1 when banked, on inspection and approval, in lots of not less than 50,000 feet; $1 when all banked; $1 when all in boom; $1 when stumpage became due; and the balance of $2.25, November 1, 1884, provided the logs were then all in the boom. A settlement was to be had "at the end of the logging season," which we understand to mean in the spring, after the logs were all banked, but before they were driven. On this settlement defendants were to give plaintiff a due-bill for the amount due on the last payment. The contract also provided that defendants were, at the outset, to "advance" plaintiff $100 in supplies, which was to be refunded, with interest, in case the logs, on inspection by defendants, did not receive their approval.

We think it clear that the inspection and approval of the logs by defendants were to be had on the bank, before they were driven, and before any part of the purchase price was paid. It is hardly to be supposed that the parties intended that this inspection should be subsequent to the settlement between them at the end of the logging season. The object of this inspection was to enable defendants to ascertain the quality of the logs, and determine whether or not they would accept them. This was for the benefit of both parties, so as to enable them to determine their future action in the premises. It is not reasonable to presume that it was contemplated that defendants should "settle" with plaintiff, and make successive payments, or that plaintiff should drive the logs down to the boom, before it was determined whether or not they would be accepted. Our view is also corroborated by the fact that express provision is made for refunding the $100 advance, in case the logs should not be approved on inspection, while no provision is made for refunding, in such a contingency, any of the payments on the contract price, which clearly indicates that the parties contemplated that the inspection was to precede any such payments; and, if we may refer to matters of common knowledge, our construction of the contract is rendered the more reasonable by the fact that the place where the logs are banked is, in such

v.34m—33

cases, the usual as well as the most convenient place for inspection to ascertain their quality. It may also be observed that (if we are right in this) while the contract in its inception was a purely *executory* one for the sale and delivery, at a future day, of personal property not then *in esse*, and hence the article not specifically defined or selected at the time, yet, upon this inspection and approval, the contract would become one for the sale of specific logs in their then state, although the plaintiff would have to expend future labor upon them in driving them into the boom.

Turning now from the contract to the other evidence, and taking as true, as we must for the purposes of this appeal, the facts offered to be proved by defendants, it appears that plaintiff got out and banked some 950,000 feet of logs; that on March 27th (presumably "at the end of the logging season") the parties had the settlement provided for by the contract, at which the defendants gave plaintiff a due-bill for the balance due on the last payment, some $700; that the remainder of the contract price was all paid before suit, but at what particular dates does not appear. The evidence is silent as to whether or not there was any actual inspection or express acceptance by defendants of the logs on the bank. There is nothing to show that there was not. There is nothing to show that defendants were deprived of the opportunity to inspect, or that there was any agreement or understanding that this inspection should be postponed to any other time or place. Neither is there anything to indicate that the defect now complained of (unsoundness) was not patent, visible, and apparent on mere ordinary observation, or that there was any attempt on part of plaintiff to conceal the real quality of the logs from defendants. The logs were, as required by the contract, all driven by plaintiff into the boom, and received by defendants, and sawed into lumber, and no objections were made by them to the quality until after they were all thus received, and while they were being sawed up, when for the first time defendants informed plaintiff that the logs were unsound, and not of the quality required by the agreement, and that they would not pay the contract price for them.

To avoid any confusion of ideas as to the precise question here involved, it may be suggested that, upon the facts as pleaded and proved,

the counterclaim of the defendants is not brought upon an *executory* contract for nonperformance of its conditions, but upon a contract *now executed* by the delivery and acceptance of the property, and is for damages for its defective quality; and, as no fraud is claimed, the important question is whether there was a warranty of the quality of the logs, which survives the acceptance of the property by the vendees.

It is undoubtedly the settled law in this state, and generally elsewhere, that on an executory contract of sale, as in a sale *in præsenti,* of personal property, the vendor may warrant the quality, and that the vendee, upon the receipt of it, and upon subsequent discovery of the breach of the warranty, is not bound to return, (even if he has the privilege of doing so,) but may retain and use the property, and have his remedy upon the warranty. *Mandel* v. *Buttles,* 21 Minn. 391; *Tunell* v. *Osborne,* 31 Minn. 343; *Scott* v. *Raymond,* Id. 437; *Merrill* v. *Nightingale,* 39 Wis. 247; *Hull* v. *Belknap,* 37 Mich. 179; *Douglass Axe Mfg. Co.* v. *Gardner,* 10 Cush. 88; *Day* v. *Pool,* 52 N. Y. 416; *Parks* v. *Morris Ax and Tool Co.,* 54 N. Y. 586; *Brigg* v. *Hilton,* 99 N. Y. 517. But in such a case a vendee cannot, we apprehend, any more than in a sale *in præsenti,* rely upon the warranty as to defects which are at the time visible and plain, so as to be seen or known by ordinary observation, and where he has convenient opportunity to inspect the property. *M'Cormick* v. *Kelly,* 28 Minn. 135; *Day* v. *Pool, supra; Dounce* v. *Dow,* 57 N. Y. 16; *Gurney* v. *Atlantic & G. W. Ry. Co.,* 58 N. Y. 358.

It may be conceded that words of description may amount to a warranty if it appears that they were so intended by the parties. *Hastings* v. *Lovering,* 2 Pick. 214; *Hogins* v. *Plympton,* 11 Pick. 97. But *caveat emptor* is the doctrine of the common law in cases of sales of personal property, and hence its policy is to limit the effect of such a sale to the transfer of the right of property, and to throw the risk of the transaction, as to quality, upon the vendee, unless the vendor has assumed the responsibility by a warranty. Where there is such a warranty, which, of course, survives the acceptance of the property, the vendee may retain and use the property, and then set up the real or alleged defect of quality as a defence to a suit for the purchase-money,

or as a ground of an action against the vendor, without giving the latter notice of the alleged defect until after the opportunity of verifying the condition of the property has been lost. Hence courts are usually disinclined, in doubtful cases, to construe words of description as amounting to a warranty of quality. And while exceptional *dicta* and decisions may be found in this as in most other branches of the law, yet we doubt whether any well-considered case can be found where it has been held that a vendee has any remedy of any kind against the vendor of personal property for defects in quality, where he has accepted the property without objection, and where the defect is patent and visible on mere inspection, and where he had a practicable and convenient opportunity to examine it, and there was no fraud on the part of the vendor. Whether language of description is to be construed as a warranty of quality must depend essentially upon the intention and understanding of the parties as collected from their entire contract.

In the present case, we think the provisions of the contract show that the parties intended merely what is called a sale by description, and that the words descriptive of the quality of the logs, while constituting a condition precedent to be performed by the plaintiff, were never intended as a warranty which would survive the acceptance of the property. *Haase* v. *Nonnemacher*, 21 Minn. 486; *Reed* v. *Randall*, 29 N. Y. 358. The contract expressly provided for a way by which it should be determined whether the logs were of the quality contracted for, viz., by inspection on the bank. Then and there, if at all, the defendants were to exercise their right to reject if the property was not satisfactory as to quality. As before suggested, there is nothing in the case to show that they did not thus inspect and approve. But whether they did or did not is immaterial. They were required to do so if they wished ever to avail themselves of the right to object to the quality of the property as not being according to contract. Having "settled" with plaintiff at the end of the logging season, without objection, and then, after plaintiff had driven the logs into the boom, having accepted them, still without objection, the defendants must be deemed to have acquiesced in the quality as in accordance with the contract, and cannot afterwards be allowed to ob-

ject to it any more than if they had expressly accepted the logs after actual inspection upon the bank. It follows that, if defendants had been allowed to prove all that they offered to prove, they would have failed to establish any counterclaim or defence. There was therefore no error in excluding their evidence, or in directing a verdict for plaintiff.

Order affirmed.