J. L. BROWN v. L. B. BAIRD AND J. P. McKINNIS, *Partners Doing Business as the Reno Lumber Company.*

1. MEMORANDUM—*How Construed.* A memorandum which simply sets forth certain sizes and classes of lumber, fixes the selling price thereof, and does not either expressly or by clear intendment create a warranty that the lumber shall be of a width and thickness different to that usually known to the trade; *Held:* That the memorandum should be construed as describing the kind of lumber wanted and not as a warranty as to its width and thickness.

2. ACCEPTANCE OF PERSONAL PROPERTY—*Effec: of.* Where there is no express warranty accompanying a description of personal property and the buyer, after inspection and with full opportunity to examine, accepts the property, he is estopped from afterwards claiming damages for failure to comply with the description.

3. DIRECTING A VERDICT—*When Error.* It is error for a trial judge to direct a verdict when there is a disputed question of fact between the plaintiff and defendant touching the amount which plaintiff should recover.

*Error from the District Court of Oklahoma County.*

Judgment in the court below for the appellee in the sum of $59.77 for balance due upon material furnished for the erection of a house. The plaintiff in error brings the case up. The opinion states the facts.

*J. L. Brown,* for plaintiff in error.

*Selwyn Douglas,* for defendant in error.

The opinion of the court was delivered by

DALE, C. J.:   November 16, 1893, L. B. Baird and J. P. McKinnis, partners doing business as the Reno Lumber company, instituted an action in the probate court of Oklahoma county, to recover a judgment against J. L. Brown in the of $59.77, balance alleged to be due upon a bill of lumber purchased and received by Brown from the Reno Lumber company. Brown answered to the action, alleging, in substance, that the lumber received by him consisted of dimension stuff, siding, flooring and shingles; that the lumber so received was not of the width and thickness which he had contracted to receive, and that the shingles were less in number than he was charged for, and in his answer alleged that the dimension stuff claimed to be two inches thick and four inches wide and of different lengths, and the siding and flooring also

sold as of certain width and thickness, were, in fact, not of the width and thickness claimed for them, but were short on an average of about thirty per cent., and that the shingles, which were bought in bunches and sold to him at two hundred and fifty in a bunch, had, in fact, only one hundred and fifty in each bunch. As a separate and second defense he also alleged that the Reno Lumber company had entered into a combination with the other lumber companies in Oklahoma Territory to prevent or restrain competition in the sale of lumber in this territory, but inasmuch as no proof was offered in support of this allegation, and as the questions therein involved are not raised in the brief of appellant, no further attention will be given to the second defense.

Judgment was rendered in the probate court in favor of the plaintiff therein for the full amount claimed, and an appeal taken therefrom to the district court, where a trial by jury was granted, evidence heard, and by the court a verdict was directed in favor of the Reno Lumber company in the sum of $59.77, the full amount claimed.

The entire evidence and ruling of the court upon all disputed questions of fact, together with the instructions given, as well as those offered and refused, are preserved in the record and are before us for review. From an inspection of the evidence it appears that in the fall of 1891, the plaintiff in error, J. L. Brown, contracted with the defendant in error, the Reno Lumber company, to purchase lumber for the erection of a house. That at the time of such contract a certain memorandum was made, setting forth the different items needed and fixing the prices thereof. It also appears that in payment for the material contracted for, Brown gave to the Reno

Lumber company two promissory notes, aggregating $280.80, which were executed by persons indebted to Brown, and which were accepted at their face value by the Reno Lumber company. After the contract was first entered into, Brown from time to time, as needed in the erection of the house, received lumber of the character heretofore mentioned, and in an amount, as claimed by the lumber company, exceeding in value the face of the notes to the extent of $59.77, which sum Brown refused to pay. At the trial Brown sought to show that the lumber was not of the width and thickness as stated in the memorandum, and that the shingles, in number, were not *delivered in compliance with the terms of such memorandum; also that the bill rendered and executed by the lumber company was excessive, and that the same should be for $50.93 instead of $59.77, giving to the lumber company all they could rightfully claim upon their account as rendered.

The trial court excluded all testimony offered by Brown in support of either contention and instructed the jury to return a verdict for the lumber company in the sum stated.

The plaintiff in error has filed a brief in which he alleges three propositions which, summarized, may be stated as follows:

1. The lumber having been paid for in advance by delivery of the notes, was Brown compelled to accept the customary measurement of lumber dealers, or was he entitled to lumber of the full measurements as stated in the memorandum made at the time of the contract?

2. The effect to be given to the memorandum made out at the time of the contract.

3. Did the court err in withdrawing the case from the

jury while there was a dispute upon the amount for which plaintiff below might recover, conceding that the defendant below was bound by their measurement?

From the evidence and record in this case we are unable to determine whether the trial court held as a matter of law that Brown was bound by the custom of the lumber dealers in making their measurements, or whether the undisputed facts in this particular case estopped him from denying the measurements as made by the lumber company.  It is' in testimony and is undisputed that Brown made no complaint until he had used the lumber in building the house, and that he was present at the yard of the company at the different times when the lumber was loaded upon wagons, and that he carefully sorted the lumber as he received it, and also that at the time he was receiving same he called the attention of one of the employes of the lumber company to the fact that the lumber did not measure in width and thickness the sizes as claimed for it and under which it was being sold.  In view of such a state of facts we think there was nothing for the jury to consider upon the question of whether or not Brown was bound by the measurements as made by the lumber company and accepted by him.

The memorandum was made out upon the bill heads of the company, but was not signed by either Brown or such company, and contained no express or implied terms of warranty as to the quality of the lumber or that the same should be of full width and thickness.  It was intended merely as a description of the lumber wanted. Where a memorandum does not in express terms or by clear intendment create a warranty, the courts should not give it such effect, as such a construction would

create a liability not in contemplation of the parties to the contract. Giving to the memorandum the effect of a mere instrument of description, we come to the question of the right of the plaintiff in error to recover upon the failure upon the part of the lumber company to furnish material of the full measurement and in the amounts purported.

It may be stated as an indisputable proposition of law that if a merchant contracts to deliver a quantity of goods or materials of a certain kind, quality or grade, he will be bound by his contract; and it was unnecessary for counsel for appellant to cite authorities in support of this proposition, but in this case we are not dealing with such a contract but with a person who purchased certain building material from a lumber company, and after having himself selected and used such material in the erection of a building, claims that he is being charged with more lumber than he received in that he is being charged for scantling of the size of 2x4 inches, which in fact only measure $1\frac{1}{2}$x$3\frac{1}{2}$ inches; that the flooring and siding are proportionately short, and that he was charged for bunches of shingles purporting to contain two hundred and fifty each when in fact such bunches contained only one hundred and fifty each. In explanation of this apparent discrepancy in sizes, witness on behalf of the lumber company testified that the lumber had originally, as cut, been of the sizes which it purported to be, but that by planing, dressing and drying it had been reduced in size to the measurements shown by the defendant, Brown. It appears, however, from the evidence that all the material sold was of full measurements and amounts generally used and handled by lumber companies in this territory, and that the

measurements of lumber and number of shingles were those customary to the trade. It does not appear that any intentional deceit or fraud was practiced by the lumber company, either in the sale or delivery of the lumber to Brown. Under these conditions, if Brown was ignorant of the general custom in vogue among lumber dealers at the time he entered into the agreement for the purchase, he might have refused to have received the lumber offered because the same failed to comply either in size or amount to that described in the memorandum. (Tiffany on Sales, p. 156, and authorities therein cited.) But we think that where there is no express warranty accompaning the description and the buyer, after inspection and with full opportunity to examine, accepts the goods, he is estopped from afterward claiming damages for failure to comply with the description. (*Hasse v. Nonnemacher*, 21 Minn. 486; *Maxwell v. Lee*, 34 Minn. 511; *Comstock v. Sanger*, 51 Mich. 497; *Zabriskie v. C. V. R. R. Co.* 131 N. Y. 72.)

In the latter case the rule is thus announced:

"Where the quality of goods is likely of discovery upon inspection and where after full opportunity of inspection the goods are accepted, and no warranty attends the sale, the vendee is precluded from recovering damages for any variation between the goods delivered and those described in the contract,"

Applying this rule to the case under consideration we find that Brown may not recover for shortage which he claims to exist in the amount of lumber and number of shingles with which he was charged and that received by him, because he was present at the time of the delivery, accepted each article as delivered and acquiesced in the measurements made at the time of the delivery. This view of the case under consideration makes it necessary

for us to determine what effect should be given to the custom of the trade which permits the delivery of lumber less in measurement than that contracted for by a purchaser, as we hold that such question is not properly in this case.

This conclusion leaves but one question in the case for further consideration: Did the court err in directing a verdict for the full amount claimed by plaintiff? It appears from the evidence that the lumber company made out three bills which were at different times presented to Brown, each of which bills were for the same account and were respectively $71.65, $59.77 and $50.93. There was a dispute between the parties as to which bill was correct. Upon the trial the lumber company claimed that the correct amount due was $59.77, while Brown claimed there remained but $50.93 still due to the lumber company. The difference between the two sums was a disputed question which should have been submitted to the jury, and it was error for the court to decide the matter, and by reason of such error the case must be reversed, unless defendant in error will remit the difference between the two sums; and it is the judgment of this court that this case be remanded to the lower court and the plaintiff therein be given an opportunity to file his remittere in the sum of the difference between the amounts $59.77 and $50.93, and in case such remittere shall be filed within the time to be fixed by the court, the judgment of the lower court shall be affirmed with costs, and in case of failure to file such remittere, the judgment of the lower court shall be vacated and a new trial granted.

All the Justices concurring.