AMERICAN GLUE CO. *v.* RAYBURN.[1]

1. SALES—CONTRACT—CONSTRUCTION—WARRANTY—QUALITY STIP-
ULATED.
  Where defendant required glue for a specific use, with which
  plaintiff was acquainted, a contract to furnish same "Quality
  in every way to be up to standard, or same as has been deliv-
  ered during past 60 days," does not provide for two qualities,
  the furnishing of either of which will comply with the con-
  tract, but is a warranty that the glue furnished shall be equal
  to that which has been furnished during the 60-day testing
  period.

2. SAME—WARRANTY—BREACH—EVIDENCE—IDENTIFYING DEFECT.
  Where glue is sold under a warranty that it shall be equal to
  that furnished as a sample, proof that the buyer used it un-
  der precisely the same conditions and circumstances, and
  that it did not hold as did the sample, is sufficient evidence
  of a breach of the warranty, and identification of the par-
  ticular defect in the glue, and proof that it was something for
  which the seller alone was liable, is unnecessary.

3. SAME—WARRANTY—BREACH—DAMAGES—RECOUPMENT — INVES-
TIGATION.
  Where glue was being furnished to a manufacturer of panels,
  under a warranty of quality, he had a right to assume that
  the seller was complying with his contract and to continue
  using the glue and investigating the trouble until he became
  satisfied that the glue was at fault before notifying the seller
  of the defect; for loss occurring during the proper testing
  period the buyer may recoup his damages, but he is not en-
  titled to damages for bad panels constructed after he should
  have become satisfied that the glue was bad.

Error to Alpena; Emerick, J.    Submitted October 23,
1907.    (Docket No. 17.)    Decided January 6, 1908.

Assumpsit by the American Glue Company against
Robert H. Rayburn and William H. Campbell, copart-
ners as the Michigan Veneer Company, for goods sold

---

[1] Rehearing denied February 15, 1908.

and delivered.   There was judgment for defendants, and plaintiff brings error.   Affirmed.

*Charles R. Henry (De Vere Hall,* of counsel), for appellant.

*Joseph H. Cobb,* for appellees.

The plaintiff corporation is a manufacturer of glue. The defendants, copartners, are manufacturers of veneered panels used in the manufacture of furniture. They use a large amount of glue in fastening the veneers together. Plaintiff had sold the defendants glue for some time prior to the transaction here involved. Plaintiff, desirous of obtaining the trade, solicited it through its agent, Mr. Williamson. Mr. Williamson evidently obtained a conditional order which he communicated to the plaintiff. Thereupon, on September 19, 1903, plaintiff wrote defendants stating:

"We are very much pleased to enter your contract for your requirements of glue to January 1, 1905, contingent upon the sample lot of three barrels which we are now shipping you being satisfactory."

Defendants replied September 21st, stating:

"If we make a contract with you it must be with the agreement that we terminate it any time quality of glue is not satisfactory, and that you guarantee price and quality."

Several other letters passed between the parties, the sample glue was sent, defendants wrote claiming that it was not equal to that formerly purchased from plaintiff; other samples were sent and used, and on November 16, 1903, the parties entered into a contract, the part which is here material reading as follows:

"It is agreed by the American Glue Co., of Chicago, to sell the Michigan Veneer Co., of Alpena, Mich., their supply of glue for veneer work from date to December 31, 1904, at 9c. per lb., quality in every way to be up to

standard, or same as has been delivered during past sixty days."

Shipments were made under the contract and payments made until some time in April, 1904. On April 23d, defendants wrote plaintiff that the glue "is not of the quality you gave us at first. * * * We have put off making complaint until now, but the 'kick' from loose panels we are having past few months requires a quick remedy." At that time plaintiff had shipped goods February 17th and 29th, March 15th and 31st, and April 15th, and also one afterwards, on the 30th, which are the bills involved in this suit. On May 7th defendants again wrote plaintiff that they were not satisfied with the quality of the glue. To this plaintiff replied that they would send their Mr. Williamson there on the 11th or 12th, and that he would go into the matter thoroughly. Mr. Williamson visited the defendants' plant on May 12th and made an examination. Soon thereafter defendants canceled the contract and plaintiff brought this suit to recover for the above shipments. The defendants pleaded the general issue with notice of set-off and recoupment. The recoupment was based upon damages claimed to have resulted to defendants by the use of poor glue not in accordance with the contract. The case was submitted to the jury who found a verdict for the defendants for $1,777.18.

GRANT, C. J. (*after stating the facts*). 1. The court submitted the case to the jury upon the theory that the contract called for glue of the same quality as that which had been furnished during the testing period. We think the record discloses that the case was tried by both parties upon that theory. It is, however, now insisted by the plaintiff that the contract provides for two qualities, and that if the plaintiff furnished glue of either quality it had complied with the contract. Counsel base this claim upon that provision of the contract reading:

"Quality in every way to be up to standard, or same as has been delivered during past 60 days."

We think counsel's position is unsound. Both parties to the contract understood the use to be made of the glue. Its use was a specific one. The defendants desired only one standard or quality, and that was the one which complied with the samples furnished and upon which the contract was based. The contract was a warranty that the glue to be furnished under it should be equal to that which had been furnished during the testing period, and the court correctly so instructed the jury. The evidence on this question was in sharp conflict.

2. Counsel for plaintiff preferred several requests bearing upon the absence of proof of any defect in the glue. The position appears to be that, to use their own language:

"The proof should locate the defect in the glue, identifying it as a thing for which the plaintiff alone was liable."

The defendants gave evidence to show that the test glue securely held the panels together; that the contract glue did not; that they used the glue in precisely the same way as they did the test glue; that the same man mixed both; that they used the same kind of lumber, and that it was in the same condition as that used during the test period. This was sufficient evidence to prove that the contract glue was not equal to the test glue. Defendants were under no obligations to show what the defect was. Proof that they used the glue under precisely the same conditions and circumstances, and that it did not hold the panels together, was sufficient evidence to go to the jury that the glue was defective, and not such as the contract called for.

3. It is also insisted that the defendants continued to receive and use the glue after they had ascertained that it did not hold the panels; that it was their duty to notify the plaintiff as soon as the glue became unsatisfactory, and, not having done so, they cannot recover. This is perhaps the most doubtful question in the case. The de-

fendants were bound to give the glue a fair trial. Their own protection required that they use every reasonable means to determine whether the fault was with the glue or arose from some other cause, and they were authorized in taking sufficient time to investigate the cause of the trouble. They and their witnesses testified to various things which they did during this period to see if the fault lay anywhere else than with the glue. They testified that there was some trouble in December, and that after that the trouble increased, panels came apart more frequently, and some they had shipped to customers were returned.

The court very pointedly and clearly instructed the jury that it was the defendants' duty to notify the plaintiff as soon as they knew or should have known that the fault was with the glue, and that they could not recover damages for bad panels constructed after they should have become satisfied that the glue was bad. The court used this language:

"I say that they [defendants] ought not to recoup damages, after they should, as honest men, of reasonable judgment and prudence, have become satisfied that the glue was at fault for use in making these panels."

The question was properly submitted to the jury, unless the law required the defendants to notify the plaintiff upon discovery that for some reason the panels were bad, discontinue its use and cease their investigation as to the cause of the trouble. We do not think the law imposed that duty upon them. They had a right to assume that the plaintiff was performing its contract, and were justified in using the glue and pursuing their investigations until they had become satisfied where the fault lay. Then it was their duty to act.

4. There are many assignments of error as to the admission and rejection of evidence bearing upon the questions above discussed. They have had due consideration, and we find no prejudicial error in them. No question is raised as to the correctness of the measure of damages

given by the court to the jury, but there are many assign-
ments of error upon the admission and rejection of testi-
mony bearing upon the damages.  We have also exam-
ined these, and find no prejudicial error.

The trial of this case was long and hotly contested, last-
ing eight days.  On the material points there was a direct
conflict of evidence.  All the evidence material for the
jury to consider was admitted.  None that was rejected,
even if some of it might with propriety have been ad-
mitted, could have been of such a character as to affect
the verdict.

Judgment affirmed.

BLAIR, MONTGOMERY, OSTRANDER, and HOOKER, JJ.,
concurred.