ST. ANTHONY & DAKOTA ELEVATOR COMPANY v. PRINCETON ROL-
LER MILL COMPANY.[1]

June 12, 1908.

Nos. 15,572—(76).

**Sale without Warranty.**

It conclusively appears from the evidence that after inspection appel-
lant purchased from respondent certain grain, at stipulated prices, located
in certain bins in respondent's elevator, the same to be delivered to
appellant at the elevator within thirty days. *Held*, that the agreement
of purchase was not completely merged in a letter confirming the sale
written by respondent the following day; that the grade of grain men-
tioned in the letter was merely descriptive of its character, and did not
constitute a warranty as to quality; and that, having inspected and ac-
cepted the grain without objection, appellant was bound by the terms of
the purchase.

Action in the district court for Mille Lacs county to recover $169.69,
amount alleged to be due upon the purchase price of a quantity of
wheat. The case was tried before Taylor, J., who directed a ver-
dict in favor of plaintiff for $180.71. From an order denying its
motion for judgment notwithstanding the verdict or for a new trial,
defendant appealed. Affirmed.

*E. L. McMillan,* for appellant.

*Wilson & Mercer* and *Kerr & Fowler,* for respondent.

LEWIS, J.

Respondent operated a grain elevator, and appellant owned and op-
erated a flourmill, only a short distance apart, at Princeton. The
complaint alleged that on March 30, 1906, respondent sold to ap-
pellant two thousand bushels, more or less, of bin-burnt wheat, at the
agreed price of sixty nine and one half cents per bushel, and one
thousand bushels of wheat, more or less, of grade lower than No.
1, at the agreed price of seventy one and one quarter cents per bushel;
that before such sale was made appellant inspected and examined the
wheat by sample drawn from the respective bins, and it was mutual-
ly understood and agreed that the wheat so bought was bin-burnt,

[1] Reported in 116 N. W. 935.

104 M.—26

and of the grade then agreed upon, viz., two thousand bushels No. 3 and one thousand bushels No. 2; that appellant removed the wheat from the elevator within thirty days after date of purchase; and that it had paid all of the same except $169.69. As a counterclaim appellant pleaded that on March 30, 1906, it had purchased the two thousand bushels of No. 3 wheat at the agreed price of sixty nine and one half cents per bushel, and the one thousand bushels of No. 2 wheat at seventy one and one quarter cents per bushel, to be removed from the elevator within thirty days; that it was difficult to determine the exact quantity and quality while the wheat was in the bins, and that no attempt was made to inspect or pass upon the grade and quality; that respondent warranted and agreed that all of the wheat so sold and delivered was of the grade stated, viz., No. 2 and No. 3; that, relying on such warranty, appellant received the grain, which turned out to be what is known in the trade as "No Grade." At the close of the testimony the court directed a verdict for respondent for the amount claimed in the complaint, with interest, and ordered a verdict against appellant on all the counterclaims.

The evidence establishes beyond controversy that the negotiations for the purchase of the wheat were commenced at Princeton, between Craig, appellant's general manager, and Wikeen, respondent's local agent in charge of the grain elevator. Craig went over to the elevator with Wikeen, and they drew out of the respective bins several bushels of wheat and examined it, and Wikeen communicated with his principal as to the prices. Soon after this preliminary examination, respondent's representative, Cook, was in Princeton and had a conversation with Craig with respect to the wheat, which resulted in a further examination, and the sale was effected at the prices agreed upon, the wheat to be taken out of the elevator within thirty days. Upon Mr. Cook's return to Minneapolis, respondent, on March 30, 1906, wrote the following letter confirming the sale:

> Gentlemen: We hereby confirm sale to you by our Mr. Cook of 2,000 bushels, more or less of No. 3 wheat at 69½, and 1,000 bushels, more or less, of No. 2 wheat at 71¼, this wheat is to be taken out and paid for some time within thirty days from date.

The wheat was taken out of the elevator from time to time by appellant, and part of it was used in its mill at Princeton, and two carloads were shipped by appellant to respondent at Minneapolis, there sold, and the proceeds applied on appellant's account. Appellant contends that the agreement was merged in respondent's letter of March 30, and that it was error to receive oral testimony as to what took place between the parties; that the writing constituted a warranty as to the quality of the wheat, viz., that it was to be No. 2 and No. 3; and, inasmuch as the wheat sold did not come up to the grades described in the contract, respondent was not entitled to recover, and appellant was entitled to recover on the counterclaim.

We are of opinion that the trial court correctly disposed of these questions. The writing did not purport to contain the entire transaction, and was not necessarily complete. It was competent for respondent to show that the writing was not intended to be a warranty of No. 2 and No. 3 wheat, but that appellant purchased the wheat which was in the several bins. Under some circumstances such a writing might be considered as a warranty of the quality; for instance, where the parties are conducting business in different localities, and a purchase is made in the open market. Under such circumstances the purchaser would have a right to insist that, if No. 1 wheat was ordered, the seller, in accepting the order, guaranteed to deliver that particular quality. This case, however, presents an entirely different proposition. Appellant was informed that this was all the wheat respondent had for sale, that it was located in certain bins, that respondent might have it at certain prices, and pursuant to appellant's inspection of the grain a sale was consummated. Ample opportunity was afforded appellant for inspecting and rejecting the grain as it was delivered. It not only failed to do so, but, on the contrary, accepted and used a part of the grain, sold the remainder, and two weeks afterwards wrote respondent asking to be relieved from its contract upon the ground that on account of the size of its mill it was impossible to use the wheat.

That the parties came to terms at Princeton is clear from their course of dealings, and the letter referred to cannot be taken as a full expression of the contract. The reference therein to No. 3 and No. 2 wheat was merely descriptive, and not a warranty. Haase v.

Nonnèmacher, 21 Minn. 486; Maxwell v. Lee, 34 Minn. 511, 27 N. W. 196; Lee v. Bangs, 43 Minn. 23, 44 N. W. 671; Breen v. Moran, 51 Minn. 525, 53 N. W. 755; Miamisburg Twine & Cordage Co. v. Wohlhuter, 71 Minn. 484, 74 N. W. 175; American Glue Co. v. Rayburn, 150 Mich. 616, 114 N. W. 395.

Affirmed.

JAGGARD, J., dissents.