## TULSA STOVE & FOUNDRY CO. v. KARCHMER.

No. 19537. Opinion Filed June 24, 1930.

· C. A. Steele, W. A. Daugherty, and Font L. Allen, for plaintiff in error.

Samuel A. Boorstin and John F. Conway, for defendant in error.

BENNETT, C. The parties to this appeal will be referred to as they appeared in the trial court. Defendant is plaintiff in error. Plaintiff sued to recover price of a carload of scrap iron sold to defendant about May 15, 1927, for $12 per ton. The defense is that a large part of the scrap iron was unfit for the purpose for which it was bought and did not comply with the contract. Defendant, by cross-petition, claimed $1,000 damages against plaintiff for profits defendant alleges he would have made by the manufacture of the material if it had been as represented.

The suit was for $742.16. A jury was waived, and the cause tried to the court, who rendered judgment in favor of plaintiff and against defendant for $736.16, and defendant appeals.

For reversal defendant argues two assignments of error: First, that the judgment is not sustained by, and is contrary to, the evidence; second, that the court erred in excluding material evidence offered by defendant.

Plaintiff, as a witness, testified, in substance, that he had been in the junk business at Tulsa for many years, buying and selling scrap metal of various kinds; that about May 15, 1927, defendant, by its president, Mr. Spitznagel, bought from plaintiff a carload of scrap iron for $12 per ton, payable within 60 days. Plaintiff had first agreed to sell this carload of scrap iron to other parties who decided not to take it, and thereupon plaintiff sold same to defendant.

Two or three days after the sale plaintiff mailed to defendant a freight bill and a statement showing the weight of the metal and the amount due plaintiff therefor. Later plaintiff requested settlement of defendant's bookkeeper, who referred him to Mr. Spitznagel, Mr. Hinds and Mr. Schumacher, other officers of the company. Mr. Hinds promised to execute a note for the amount due, assuring plaintiff that he was trying to make some collections to make payment. Later Mr. Hinds stated to plaintiff that he would eventually have to pay the bill, but that he would delay it as long as possible. Plaintiff repeatedly asked payment of these parties, but he was put off from time to time. During that period Mr. Spitznagel was away on his vacation, but upon his return in the fall, he promised settlement and offered a 60-day note, which plaintiff would not accept, as suit had been brought. It was understood that the iron was to be inspected in the car upon arrival before acceptance, which is the rule and custom of the trade, but nothing particular was said about that part of it. The defendant paid the freight on the car and received it.

Cross-examination. Plaintiff brought this suit about 90 days after the sale. He knew at the time of sale that Spitznagel had authority to buy, but he did not know his official position with the company. Junk of this description is sold subject to the inspection of, and before acceptance by, the purchaser, in order to give the seller an opportunity, if same is unsatisfactory, to take it back or transfer it to another. That is the custom of the business. The purchaser did not see the iron at the time of purchase. Plaintiff was never informed that the material was unfit, unsatisfactory, or could not be used. Defendant did inform plaintiff long after the sale that there was in the shipment a very small amount of steel, about 1,000 pounds, which plaintiff authorized defendant to deduct, since the amount was only 1/127th part of the shipment. The defendant never asked plaintiff for any adjustment at any time. Plaintiff did not know and was not informed that this metal could not be used in the manufacture of the products that the defendant specialized in; the defendant made no contention that the material was not usable until after the suit was filed, and the defendant had filed his cross-petition. Automobile scrap iron can be used in the manufacture of castings. Ordinarily in a carload of scrap iron loaded by any junk dealer, there is a small amount of steel: an automobile block may have steel bolts in it; but 1,000 pounds of steel in a car of 100,000 pounds would be considered in the trade as insignificant. In the trade there was no specification as to the kind of scrap iron.

Defendant's bookkeeper, testifying for plaintiff, said that Spitznagel was president of the company at the time of the alleged purchase, and that Mr. Hinds had charge of the foundry and also did buying and selling of scrap iron.

The evidence for defendant by witness L. C. Hinds is to the effect that Mr. Spitznagel was the president of the company and made the purchase under inquiry from the plaintiff. Witness examined the car and 50 per cent. of the same was automobile blocks and crankshafts; the balance was a fair grade of machinery scrap iron. Automobile scrap iron and steel was not suited for defendant's use. In July witness suggested to plaintiff that the material was of poor quality, and he would prefer that Spitznagel, who made the purchase, should make settlement, but he was away perhaps 60 days on vacation. Junk metal is not bought sight unseen; but after the car is unloaded the objectionable material is separated and the seller notified.

Witness says he advised plaintiff that cylinder blocks could not be used in making pistons or piston rings, but that they could be used in making radiators, etc., and also in making river clamps. These the defendant did not make; says he did not tell Mr. Karchmer of that fact.

Cross-examination: Witness told plaintiff that there was 1,000 pounds of steel in the car according to the report from the man who unloaded same. Witness indicates that it was 30 or 60 days after the purchase before he made these statements to plaintiff. Meanwhile defendant used probably four-fifths of the metal. Asked as to when he made complaint as to the automobile castings, etc., witness says that it might have been September or October. Plaintiff authorized a deduction for the 1,000 pounds of steel which amounted to $6.

H. E. Bartlett, for defendant, examined the material; part of it was good; and most of it was automobile scrap; some of it was sewing machine scrap; school desk scrap, etc. This can be made into sash weights and defendant makes sash weights. Part of the material was put into river clamps and part of it was not used. The main trouble with the automobile iron was the steel bolts in it. About 400 pounds of brass was in the car. About four-fifths of the materials in the car was used by defendant.

About $150 worth of the material was not used.

In rebuttal plaintiff says that he has shipped an average of a carload of this material per day for years; that under custom the carload is inspected for undesirable material before it is unloaded, and that this can be done by those who understand the business; that it was in an open gondola car; that brass is worth 11 cents per pound.

From a glance at this evidence several facts appear: First, no effort is made by defendant to controvert the terms of the sale as detailed by plaintiff; second, the sale was made to defendant's president who had authority to buy—such president was not introduced as a witness for any purpose, nor was his absence accounted for. The only presumption that would follow is that his testimony, if introduced, would not have benefited defendant. Third, this sale was made on a credit of 60 days which would tend to negative the idea that plaintiff was seeking to palm off unfit material. Fourth, the only item objected to until after suit was that the car contained 1,000 pounds of steel, and plaintiff allowed that claim. Fifth, defendant used four-fifths of the shipment before objection, except as to the preceding item of steel. Sixth, the evidence is in conflict as to the custom of inspecting junk before acceptance. Seventh, there is no evidence that plaintiff knew that defendant could not use this material, nor that the scrap iron was to be machinery scrap iron and not automobile scrap iron.

We can see nothing in this case except a plain, uninvolved issue of fact, which has been determined by the court upon abundant evidence. No warranty was made by the vendor, and if it should be contended that the law implied a warranty in such a case, it would simply require plaintiff to deliver just what he had sold, to wit, a carload of junk scrap iron, subject to buyer's inspection. Defendant did examine, accept and use most of the iron without protest. This scrap iron was the kind called for in the contract, except as to 1,000 pounds of steel which the court allowed for and perhaps about 400 pounds of brass which is worth many times more than scrap iron of equal weight.

Defendant next complains that certain competent evidence was excluded. This evidence tended to show that certain little steel bolts were inbedded in blocks, and they would not fuse with the iron, and defendant paid about $130 in preparing this and other material so it could be used in its furnaces. No claim for this kind of damage is pleaded. The damages claimed are estimated loss of profits which defendant would have made by manufacturing the material if same had complied with the contract. The court was clearly right in its ruling on this evidence. Even if it had been admitted, it would not have warranted any other judgment than that entered. Defendant pleads that said scrap iron was to be submitted f. o. b. at Sand Springs, subject to inspection by defendant before acceptance. Good faith required defendant to make the inspection he thought proper before accepting. If defendant accepted the shipment without inspection, he waived the protection which the contract he pleaded gave him.

Many authorities might be cited to uphold our ruling. 35 Cyc. 229; Twin City Co. v. Armstrong, 116 Okla. 237, 244 Pac. 196; Sherman v. Sheffield Cast Iron & Foundry Co., 50 Okla. 109, 150 Pac. 1062; Brown v. Baird, 5 Okla. 133, 48 Pac. 180; Hannon Tailoring Co. v. Greenburg-Canter Co., 100 Okla. 113, 227 Pac. 873.

It might be added that defendant offered no proof as to the market value of the automobile scrap iron delivered, or that same was of less value than machinery scrap iron.

The most that can be said in the defendant's favor is that it has made a diligent effort to keep its word to plaintiff that it would pay eventually, but would put it off as long as possible.

For the reasons given, the judgment of the trial court is affirmed.

TEEHEE, HERR, LEACH, and DIFFENDAFFER, Commissioners, concur.

By the Court: It is so ordered.