### HARDT et al. v. WESTERN ELECTRIC CO.

(Supreme Court, Appellate Division, First Department.    June 5, 1903.)

1. SALE BY SAMPLE—DELIVERY—RIGHT OF REJECTION.

Where certain yarn was delivered by the sellers to the purchaser,
together with other yarns ordered separately, and the yarn first men-
tioned was not of the quality of the sample from which the purchaser
had ordered, the purchaser had the right to reject such yarn.

2. SAME—DIRECTION OF VERDICT.

Where, in an action for the price of yarn sold by sample, the evidence
was conflicting as to whether the yarn delivered was of the same
strength as the sample, each party testifying that his contention as to
the yarn was supported by tests made, it was error to direct a verdict
for plaintiff.

**3. Same—Time to Examine Goods.**

Where yarn was sold by sample, the purchaser was entitled to a rea·
sonable time after delivery to examine it and ascertain whether it com-
plied with the sample.

**4. Same—Rejection of Goods.**

Where yarn was sold by sample, and, after receipt of it, defendant
made tests to ascertain whether its strength was as great as that of the
sample, and, finding that it was not, immediately notified plaintiffs that he
held the yarn subject to their order, and requested what disposition
should be made thereof, there was a sufficient rejection; the yarn having
been shipped directly from the spinner, in England, to defendant, in
Illinois, and plaintiffs, the sellers, being located in New York.

**5. Same—Several Shipments—Rejection of Part.**

Where yarn was sold by sample, and various shipments of such yarn
were made from the sellers to the purchaser, the purchaser was not pre-
cluded from rejecting any shipment because of failure of quality merely
because of the fact that previous shipments had been found equal to the
sample, and accepted.

**6. Same—Warranty—Evidence.**

Where the sellers of yarn refused to guaranty the strength of it, and
samples were sent to the purchaser, who was asked to determine which
of the samples he would select, as indicating the quality of yarn to be
manufactured for him, and the purchaser selected a sample, there was
no warranty as to the quality of the yarn to be supplied.

Van Brunt, P. J., and O'Brien, J., dissenting.

Appeal from Trial Term, New York County.

Action by Engelbert Hardt and others against the Western Electric
Company. From a judgment in favor of plaintiffs, defendant appeals.
Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON,
O'BRIEN, and INGRAHAM, JJ.

Richard T. Greene, for appellant.
A. Blumenstiel, for respondents.

INGRAHAM, J. The complaint alleges a sale and delivery of
goods by the plaintiffs to the defendant, the agreed price being
$5,444.90, upon which the defendant was entitled to a credit of
$4,272.85; leaving a balance due and unpaid of $1,183.05, for which the
plaintiffs demanded judgment. The answer denies each and every
allegation of the complaint, and, for a separate defense, alleges that in
September and October, 1900, the defendant ordered certain goods,
wares, and merchandise, consisting of cotton yarns, from the plain-
tiffs, at an agreed price of $4,453; that, by the terms of the order, the
goods to be furnished were to be fully equal in quality to a certain
sample which had been previously furnished by the plaintiffs to the de-
fendant; that the yarns shipped by the plaintiffs to the defendant upon
such orders of September 17th and October 17th were accepted by the
defendant and paid for; that of the goods shipped by the plaintiffs to
the defendant on September 19, 1900, 523 pounds, known as
"80's–4–5," were defective, and not of a quality equal to the sample
from which said goods were ordered, and that the said goods were
thereupon rejected by the defendant, and the plaintiffs were thereupon
duly notified of such rejection, and that the defendant held and still
holds such goods subject to the plaintiffs' orders, the agreed price of

which was $418.40, and that the balance of the goods shipped on September 19, 1900, were fully paid for; that the goods, wares, and merchandise shipped by the plaintiffs to the defendant on October 11, 1900, being 1,016 pounds of cotton yarn, known as "80's," were defective, and not of a quality equal to the samples from which the same were ordered, and that the said 1,016 pounds were thereupon rejected by the defendant, and the plaintiffs duly notified of such rejection, and that the defendant held and still holds the same subject to the orders of the plaintiffs; that the agreed price of said 1,016 pounds of cotton yarn amounted to $812.80; and that all of the other goods contained in the shipment made by the plaintiffs to the defendant on October 11, 1900, had been fully paid for.

Upon the trial the plaintiffs proved the receipt from the defendant of an order for 1,000 pounds 78's, three ends, 1,100 pounds 78's, four ends, and 2,000 pounds 78's, five ends, "subject to approval of first shipment. First shipment to be made as soon as possible for approval." Nothing appears to have been done with this order for 78's yarn. On August 14th following the plaintiffs wrote to the defendant:

"Referring to your order for 80's 3, 4 and 5 ends cotton which we placed with our best spinner, and sent him a copy of your specifications for this count. He says he would prefer not to enter your order on the terms of guaranteeing particular lengths, as owing to the variation in method of testing, this might only lead to complications. We are sending you by this post two samples of 80's Egyptian which he can give you, but awaits your choice before proceeding. He considers the super one better of the two and one which will be satisfactory to you."

In answer to this the defendant wrote on August 17, 1900, as follows:

"Your favor of the 14th inst. at hand and we have just telegraphed you as follows: 'Samples No. 80 Cotton satisfactory. Fill orders with this quality.'"

Subsequently, on August 20, 1900, the defendant wrote to the plaintiffs:

"Your favor of the 18th inst. regarding samples of No. 80 cotton yarn at hand. In telegraphing you regarding the quality of these two samples, we overlooked the fact that there was a difference between them, but find on looking up our tests that the super quality was considerably better than the other, and your action in ordering this quality from the spinners is entirely satisfactory to us."

This correspondence constituted the contract. The first shipment under this contract was on September 19th, which included a lot of 100's under another order, and one lot of 523 pounds of 80's, four and five ends. These shipments were included in one invoice, and were sent by the plaintiffs to the defendant about September 19th. On September 29, 1900, the defendant wrote to the plaintiffs:

"We have received and tested the lot of No. 80 four and five ends cotton yarn which you billed us on the 19th inst., and find that the yarn is so weak that it will not run on our machines. We are obliged therefore to hold it subject to your orders, and would like you to advise us at once what disposition to make of it."

In answer to this letter the plaintiffs wrote on October 4, 1900, calling the attention of the defendant to the letter of August 14, 1900, and stating:

"We have now taken several tests of the sample of super quality submitted together with tests of the yarn we have delivered, and enclose a copy of same. You will notice the yarn we are delivering tests up stronger and superior to the sample the order was placed on, and for this reason we are surprised you should have any trouble."

Subsequently, on October 27th, the defendant paid the invoice covering the shipments of September 17th and 19th, deducting the value of the 80's, which it had in the letter of September 29th refused to accept. Subsequent shipments were made on October 11th and October 17th, which included cotton yarn designated "80's," and concerning these two lots the defendant wrote to the plaintiffs on October 19, 1900, as follows:

"The lot of No. 80/3 which you billed us on the 4th inst. gave an average breaking strength of 6 oz. These are the two lots of yarn which we are holding subject to your order and disposition. We have now received the lot of No. 80–3, 4 and 5–ends cotton yarn which you billed us on the 11th inst. and find on testing it that we are unable to use any of it. * * * Please advise us what disposition to make of this lot of yarn also, and oblige."

There was subsequent correspondence about these yarns, the defendant refusing to pay for the No, 80's. The correspondence ended by a letter from the plaintiffs to the defendant of March 22, 1901, stating that the tests that they had made proved the yarns equal, if not superior, to the samples originally submitted, and upon which the defendant had placed its order, and insisting upon the payment of the contract price of the yarns delivered. To this demand the defendant made no answer, and this suit was subsequently brought to recover the contract price of the yarns thus delivered.

The plaintiffs had expressly refused to guaranty the strength of the yarn, basing that refusal upon the situation that has been here disclosed—that variations in the method of testing might lead to complications—but submitted to the defendant samples of the quality of the yarn which the spinner who was to manufacture it could manufacture for the defendant. The defendant accepted one of the samples, and it was based upon this sample that the order was given. The order of the 80's yarns must be treated as a separate order, and, although the 80's yarn was delivered with other yarns ordered by the defendant, the defendant undoubtedly had the right to reject the shipment of the 80's yarn if it was not what it had contracted to buy, that is, of the quality of the sample which had been submitted to the defendant, and upon which it had based its order. The plaintiffs, after proving this correspondence, introduced testimony tending to show that the yarns shipped upon this order were stronger than the sample that was sent, and upon which the order was given. The plaintiffs then rested, and the defendant produced in court the rejected yarn, and tendered it to the plaintiffs, and introduced evidence tending to show that it was not equal in strength to the sample, and did not stand the same test. At the end of the case the plaintiffs moved for the direction of a verdict, which motion was granted, to which the defendant excepted, stating:

"I take an exception to your honor's direction of a verdict in this case, claiming that we have a right to go to the jury on the question whether the goods which were furnished pursuant to our order complied with the sample

or not. I ask your honor for a new trial on all the grounds specified in the Code, under section 999."

That motion was denied, and the defendant excepted.

I think that there was a question for the jury as to whether the yarns delivered to the defendant were equal to the sample upon which the order was based, and that there was evidence of a sufficient rejection, under the circumstances. It would seem that this yarn was shipped directly from the spinner, in England, to the defendant, in Chicago. There were separate shipments of the 80's yarn included with other yarns purchased by the defendant from the plaintiffs and paid for, as to which no question arises. When the first shipment of the 80's (that of September 19, 1900) was received by the defendant, it had a reasonable time to examine the yarn to ascertain whether or not it complied with the contract which the plaintiffs had made. The defendant made that test, and rejected the 80's yarn contained in that shipment, as not complying with the contract, and constantly refused to accept that yarn as a compliance with the contract. In the meantime other shipments had been made direct to the defendant in Chicago. The second shipment appears to have been of the satisfactory quality, and was accepted and paid for. The third and fourth shipments, however, according to the defendant's evidence, failed to comply with the contract, and were rejected by the defendant. When the plaintiffs were notified of the rejection of the 80's yarns included in the shipment of September 19th, they requested that the matter be allowed to remain in abeyance until they could communicate with the manufacturer, and to that request it would appear that the defendant acceded. Subsequently the manufacturer insisted that the yarn delivered was equal to the sample, and the plaintiffs insisted upon holding the defendant to its purchase, and refused to accept a return of the yarn.

It is undoubtedly the rule that the defendant had no right to accept the shipment, retaining a part of it, and refusing to pay for the balance; but, as these shipments were made separately (and the correspondence shows that such was contemplated by the parties when the contract was made), the defendant was not precluded from rejecting any shipment because previous shipments had been found to be equal to the sample, and acceptable under the contract. The general rule in relation to contracts of this character is stated in Gurney v. Atlantic & G. W. R. Co., 58 N. Y. 358, where the court say:

"The general rule is, when articles are sold upon an executory contract, like the one in question, that the delivery and acceptance of the articles after examination, or an opportunity to examine them, is a consent or agreement that the articles correspond with the contract, and precludes a recovery for any defects which may exist. The vendee must immediately rescind the contract, and return or offer to return the goods. He cannot retain the property, and afterwards claim damages by action or recoupment for inferior quality. Such a transaction differs from a sale with warranty, in that the stipulated quality is a part of the contract itself, and not collateral to it."

In Pierson v. Crooks, 115 N. Y. 539, 22 N. E. 349, 12 Am. St. Rep. 831, this distinction between a warranty that survives the ac-

ceptance of the goods, and an executory contract for the future sale and delivery of goods of a specified quality, where. the vendor is bound to furnish articles corresponding with the description, is again discussed, and Judge Andrews there says:

"There is no dispute as to the rule of law touching the rights of parties under an executory contract for the future sale and delivery of goods of a specified quality, in the absence of express warranty. The quality is a part of the description of the thing agreed to be sold, and the vendor is bound to furnish articles corresponding with the description. If he tenders articles of an inferior quality, the purchaser is not bound to accept them. But if he does accept them, he is, in the absence of fraud, deemed to have assented that they correspond with the description, and is concluded from subsequently questioning it. This imposes upon the vendee the duty of inspection before acceptance, if he desires to save his rights in case the goods are of inferior quality. There is in such case no warranty of quality which survives acceptance, and the vendee cannot reject the goods after acceptance, or recover damages for inferior quality. He can do nothing inconsistent with the right of rejection, or do what is only consistent with acceptance and ownership, without precluding himself."

And the general rule as stated in section 706 of Benjamin on Sales is approved—that, where goods are sent to the buyer in performance of the vendor's contract, the buyer is not precluded from objecting to them by merely receiving them, for receipt is one thing, and acceptance another; "but receipt will become acceptance if the right of rejection is not exercised within a reasonable time, or if anything be done by the buyer which he would have no right to do unless he were the owner of the goods." In Smith v. Coe, 55 App. Div. 585, 67 N. Y. Supp. 350, affirmed by the Court of Appeals in 170 N. Y. 162, 63 N. E. 57, the same rule is recognized as established in this state.

Applying this principle, it is quite evident that there was no warranty as to the quality of the yarn to be supplied under this contract. There was an express refusal to guaranty the strength of the yarn, which the parties understood was to be manufactured by spinners with whom the plaintiffs would place the order; but samples of yarn manufactured by these spinners were sent to the defendants, and they were asked to determine which of the samples they would select, as indicating the quality of yarn to be manufactured for them. They selected one of the samples known as the "Super Quality," and approved of the plaintiffs' action in ordering this quality from the spinners. Here the exact situation was known to the parties. The plaintiffs were to order the quality of yarn indicated by the sample selected by the defendants, and upon ordering that quality of yarn, and the delivery to the defendants of the quality indicated, the plaintiffs complied with their contract. The first shipment of this yarn was received by the defendants on the 19th of September, and a bill for yarn was sent to the defendants. The first objection to this yarn appears in a letter of September 29th, in which the defendants stated that they had received and tested a portion of the yarn, and found that the yarn was so weak that it would not run on their machines, and that they held it subject to the plaintiffs' order.

Considering the method of delivery contemplated by the parties, it would seem that the defendants adopted the only available method of rejecting this yarn as a compliance with the contract, and, when the

defendants insisted upon their rejection of the yarn, the plaintiffs wrote:

"We sent those tubes on to Messrs. McConnel & Co., Ltd., and have asked them to go into the whole matter very closely and report to us at once. We will ask that this whole matter be left in abeyance until we hear from them, as in the case of an allowance on the yarn you are using which you claim is weak, we would have to have their authority for making same. We will take this matter up with you again as soon as we hear from them, as we wish to have it adjusted at the earliest moment."

There was no objection on the part of the plaintiffs to the defendant's accepting one shipment and rejecting the others, and the plaintiffs requested that the whole matter be left in abeyance until the manufacturers were heard from, and in that the defendant acquiesced. The rejected yarn was produced in court and tendered to the plaintiffs at the trial, and the defendant's liability for this yarn thus delivered depended upon whether or not it was what the plaintiffs had agreed to sell to the defendant, viz., yarn of the character indicated by the sample upon which the order was given. The order for this 8o's yarn being separate from the other yarn that was sold and delivered, the acceptance by the defendant of the other yarn, although included in the same shipment, was not an acceptance of any part of the 8o's yarn sold and delivered under a separate contract. The defendant within a reasonable time rejected the first shipment of the 8o's yarn made under the contract for those goods, and based such rejection upon the claim that the yarns were not of the strength indicated by the sample. That, I think, the defendant had a right to do, and the question as to its liability for these yarns was reserved until the manufacturers could be heard from. We recognize the rule that the defendant could not accept a part of a shipment and refuse to accept the balance, but there is no evidence that it accepted any part of the shipment of these 8o's yarns, except the entire shipment of October 13th, which it accepted as a compliance with the contract, and for which it has paid. The one question in the case was as to whether the shipments that the defendant refused to accept and pay for complied with the plaintiffs' contract, and that question was, upon this evidence, a question of fact for the jury, and should have been submitted to them.

It follows that the judgment appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except VAN BRUNT, P. J., and O'BRIEN, J., who dissent.