# Smith, Appellant, *v.* Levy.

*Contract—Sale—Executory contract—Goods sold and delivered—Tobacco.*

In an action to recover for tobacco sold and delivered, it appeared that the defendant agreed in writing to purchase the plaintiff's present crop of tobacco, wrappers to be paid for at fifteen and one-fourth cents per pound and fillers at five cents per pound, "no fillers to be stripped in the wrappers." It was also provided that the tobacco should be well assorted and in good merchantable order, and delivered at defendant's warehouse. Plaintiff delivered one lot, which was received and paid for. Shortly thereafter he delivered the remainder, which the defendant rejected on the ground that it had not been properly assorted, but that fillers had been mixed with wrappers, and that the tobacco was not in good merchantable condition. At the time of the written contract, the tobacco was hanging in plaintiff's barn, and before it could be delivered it had to be cured, stripped and assorted. The evidence was conflicting as to the condition of the second lot of tobacco when it was delivered. *Held,*

(1) That the burden was on the plaintiff to show that the tobacco tendered and rejected was well assorted, and in good merchantable order.

(2) That the acceptance of one lot of tobacco did not relieve the plaintiff of the covenants of the contract as to the tobacco which he subsequently tendered.

(3) That the contract was executory and title to the tobacco did not pass at the time the contract was made.

(4) That it was competent for the defendant to establish by the testimony of witnesses expert in such matters what was the condition of the tobacco at the time of the alleged delivery, and it was not necessary that the plaintiff should have had notice that such witnesses were to make such examination.

(5) That it was proper for the defendant to show that the plaintiff had been notified to remove the tobacco from defendant's warehouse after it had been rejected.

(6) That evidence of the market value of the tobacco actually tendered, but which was not what the defendant had agreed to buy, was not admissible; and

(7) That the whole case was for the jury and that a judgment and verdict for defendant should be sustained.

Argued Nov. 12, 1908. Appeal, No. 53, Oct. T., 1908, by plaintiff, from judgment of C. P. Lancaster Co., March T.,

1907, No. 20, on verdict for defendant in case of R. C. Smith v. M. Levy. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Assumpsit for tobacco alleged to have been sold and delivered. Before LANDIS, P. J.

The facts are stated in the opinion of the Superior Court.

After Christian E. Herr had testified, the following motion was made:

Mr. Davis: I ask that all the testimony of this witness be stricken out, because it is an alleged examination of the tobacco without notice to the plaintiff or his presence, to know whether it was his tobacco or not.

Objected to by the defendant.

The Court: That is disallowed.

Plaintiff excepts. [6]

Alfred Kendig, a witness called by the defendant, was asked this question: "Q. How did you find that tobacco, with reference to its being sorted or not?"

Mr. Davis: I object.

The Court: Let him answer.

Plaintiff excepts. [7]

Amos B. Denlinger, a witness called by the defendant, was asked this question: "Q. You tell the court and jury, just in your own way, what examination you made of that tobacco, or what was made of it, and what condition you found it in."

Mr. Davis: I object, if the court please.

The Court: Let him answer.

Plaintiff excepts. [8]

"A. I examined the tobacco and found that probably half of it would have been wrappers; that the rest was fillers of different colors, sandy and not sized up. That is about the whole of it. Not lengthened up all nicely; lengthened the way we do, the way you size tobacco, it wasn't."

Mr. Coyle: "Q. I can't hear you. A. It wasn't sized up even. Q. Then it was in that condition before the buyer looked at it hanging up in the barn, wasn't it?"

Mr. Coyle: That is objected to as immaterial.

The Court: Disallowed. It is not cross-examination either. Plaintiff excepts. [9]

George Herr, a witness called by the defendant, was asked this question on cross-examination: "Q. You were there when he brought his first lot, were you? A. I was working in the cellar, yes, sir. Q. How many bales of wrappers were there at that time, and how many fillers?"

Mr. Coyle: That is objected to as not cross-examination.

The Court: He did not testify about that. That is disallowed. That is paid for. It is immaterial. The whole dispute is about this second lot.

Plaintiff excepts. [10]

Morris Levy was asked this question: "Q. Will you tell us how many bales there were in the first delivery on January 18?"

Mr. Coyle: That is objected to as not cross-examination and not material.

The Court: That is disallowed. Plaintiff excepts. [11]

"Q. Did you ever send word or notice to Mr. Smith that you were going to have any of these men there to examine this tobacco?"

Mr. Coyle: It is objected to as immaterial.

The Court: It is disallowed. That does not make any difference.

Plaintiff excepts. [12]

"Q. Did you ever give notice to Mr. Smith that you were going to have anybody there to inspect this tobacco?"

Mr. Coyle: That is objected to as immaterial.

The Court: Disallowed. It is wholly immaterial.

Plaintiff excepts. [13]

W. W. Bones, a witness called by the defendant, was asked this question: "Q. Will you please tell the court and jury how you found that tobacco, as to its being in merchantable order and well sorted and free from damage?"

Objected to by plaintiff. Allowed. Plaintiff excepts. Bill of exceptions signed. [14]

"A. It didn't impress me favorably. With all due respect to my friend, the farmer, I couldn't say—"

Mr. Davis: Never mind about that. Just tell us how it was.

"A. It wasn't put up merchantably."

Mr. Coyle: I offer in evidence, if your honor pleases, "C. I. L. No. 6," the copy of the letter dated February 20, 1907, from Mr. Levy to Mr. Smith; and the registry return receipt, marked "C. I. L. No. 7," dated February 22, 1907, signed by R. C. Smith.

Mr. Davis: Objected to: First, because it is argumentative and self-serving; second, written after suit brought and an appeal taken to court.

Admitted in evidence.

Plaintiff excepts. [15]

Mr. Coyle reads "C. I. L. No. 6" to the jury.

Copy of "C. I. L. No. 6:"

"2-20    7

"Mr. R. C. Smith,

"Dear Sir: I desire to notify you again, as I notified you verbally at the time your tobacco was delivered at the company's warehouse, that the tobacco is not according to contract, and I cannot accept or receive the same. The tobacco is at the warehouse, corner Prince and Lemon Sts., where you left it, subject to your order and at your risk.

"Yours truly,

"MORRIS LEVY,

"Agent United Cigar Manufacturing Co."

Mr. Davis: I want to call Mr. Smith to prove that the value of his tobacco was equal to the amount of the sale, and was worth that in the market at the time.

Objected to by the defendant as immaterial and irrelevant.

The Court: That is disallowed. He sued on the contract.

Plaintiff excepts. [16]

The court charged in part as follows:

[There is no other testimony upon this point, and it seems to me that it would not be unfair to assume that it is still there, and it belongs, we say to you, to the plaintiff or the defendant, as you shall determine this suit. If the tobacco was delivered in proper condition to Mr. Levy and he is obliged to pay for

it by your verdict, it is, of course, then his tobacco. If your verdict is for the defendant, then you will have ascertained that the tobacco was not in good condition, and was not received, and then, of course, it belongs to the plaintiff.] [1]

[The whole question may, therefore, be summed up as follows: If you believe that the plaintiff performed his contract by delivering his tobacco substantially in accordance with its terms, then the defendant had no right to reject it, and your verdict should be in favor of the plaintiff for the full amount of his claim, with interest from January 31, 1907. If, on the other hand, he did not substantially perform his contract, if the tobacco was not properly assorted, by reason of fillers being mixed with the wrappers, or if there was damaged or rotten tobacco in the crop, or if it was not delivered in a good merchantable order, as was stipulated for by the contract, then your verdict should be for the defendant.] [2]

[You will consider this question fairly and impartially. This you have sworn to do. If Mr. Smith carried out his contract, he is entitled to his money. If he has not substantially done so, the defendant should not be asked to pay for this tobacco. The parties stipulated that it should be delivered in a certain way, and if the plaintiff failed to comply with his agreement, he is not entitled to recover the value of the tobacco.] [3]

[Concerning the most of these facts, you will have no trouble. The contract is in writing. It is the law between the parties and must govern their rights and conduct. The plaintiff was bound to deliver his tobacco to the defendant in the manner and in the condition stipulated in the contract, and upon his doing so, the defendant was equally bound to pay the plaintiff the contract price. A failure on the part of either released the other from his undertaking.] [4]

[In addition to the defendant and his two sons testifying as to the condition of this tobacco at the time of its delivery, there were called, on his behalf, three men who were working in the warehouse at that time,—George Herr, Gorman and Shaub,—and nine farmers or tobacco dealers,—I think seven farmers and two tobacco dealers,—who examined a lot of

tobacco in the warehouse with tags on marked "Smith." The three workmen said it was Smith's tobacco—at least, Shaub and Herr did; I am not quite certain about Gorman. These farmers were shown it by Mr. Levy, they say, on either the first or second day of February, 1907. He and his son, and George Herr and Shaub, testified that the tobacco that was shown to these men was the Smith tobacco; it was the Smith tobacco that they examined.] [5]

Verdict and judgment for defendant.. Plaintiff appealed.

*Errors assigned* were (1–15) above instructions, quoting them; (6–15) rulings on evidence, quoting the bill of exceptions.

*B. F. Davis*, for appellant.

*William H. Keller*, with him *John A. Coyle*, for appellee.

OPINION BY PORTER, J., December 7, 1908:

The plaintiff brought this action to recover for a lot of tobacco, which he alleged in his statement had been delivered to the defendant under the following contract: "Copy of C. I. L. No. 1 : 1672. No Fillers to be stripped in the Wrappers.

"LANCASTER COUNTY, Oct. 15th, 1906.

."This is to certify that I have bought of Mr. R. C. Smith his present crop of tobacco, amounting to two acres, ——— pounds.

|  |  |  |  |  |
|---|---|---|---|---|
| Best Wrappers | at 15¼ | Cents per pound | | |
| Short Wrappers | at — | " | " | " |
| Seconds | at — | " | " | " |
| Fillers | at 5 | " | " | " |

"The same to be well assorted, free from frost, pole sweat and white veins, or any other damage, and to be delivered in good merchantable order, at our warehouse, 544 Charlotte St., Lancaster, Pa., on or before ———.

"M. LEVY.

"Will not receive Watered Tobacco.

"PER BRUBAKER."

On the back of the contract was indorsed the words: "Trash

at 2 cts." It was not at the trial disputed that this indorse-
ment was a part of the contract and that the grade of tobacco
known as trash was to be paid for at the rate of two cents per
pound. The plaintiff for his own convenience delivered the
tobacco at the warehouse of the defendant in two lots; the
first lot having been delivered on January 18, 1907, was ac-
cepted and paid for. The second lot, which is involved in
this action, was by the plaintiff taken to the warehouse of
the defendant, on January 31, 1907, in bales which were
marked "Wrappers" or "Fillers," respectively, according to
the assortment which had been made by the plaintiff. The
defendant rejected this lot of tobacco upon the ground that
it had not been properly assorted, that fillers were mixed in
all the bales which were marked "Wrappers," that all the bales
contained pole-burnt, dry-rot and damaged tobacco, and
that the tobacco was not in good merchantable condition, or
according to the contract. The plaintiff admitted that the
defendant, upon examination, rejected this lot of tobacco and
refused to pay for it. The defendant testified that the plain-
tiff asked permission to leave the tobacco at the warehouse,
saying that he must go to see a sick sister, and that he would
return within a short time and take the tobacco away and
have it properly assorted. The plaintiff did not return for the
tobacco and the defendant sent him a letter, which plaintiff
admitted that he received, notifying him to come and take
the tobacco away and that it would remain at the warehouse
at plaintiff's risk. The plaintiff never returned for the tobacco
and it still remains at the warehouse of the defendant. The
plaintiff subsequently brought this action, averring that the
tobacco had been well assorted and was in good condition, and
demands the full price for the same. The plaintiff testified,
and was corroborated by other witnesses, that the tobacco had
been well assorted and was in good condition. The defendant
produced a number of witnesses who testified that the tobacco
was not well assorted, that wrappers and fillers were mixed
together, in the bales marked wrappers, that there was in
every bale pole-burnt and damaged tobacco, and that the
tobacco which plaintiff had tendered at the warehouse of the

defendant was not in good merchantable condition. The learned judge of the court below held that the parties stipulated, in their contract, that the tobacco should be delivered in a certain condition, and instructed the jury that if they found, under the evidence, that the plaintiff had performed his contract by delivering the tobacco substantially in accordance with its terms, then the defendant had no right to reject it, and the verdict should be in favor of the plaintiff for the full amount of his claim; but if, on the other hand, they found that he did not substantially perform his contract, and that the tobacco was not properly assorted and that the bales contained damaged and rotten tobacco and that the tobacco, when tendered, was not in good merchantable order, as stipulated for by the contract, then the defendant was not bound to receive it and the verdict should be in his favor. The jury under these instructions found a verdict in favor of the defendant, and the plaintiff appeals.

The contract upon which the plaintiff relies fixed the price of wrappers at fifteen and one-fourth cents per pound and the price of fillers at less than one-third that amount, or only five cents per pound, and in the printed heading of the contract was the express provision that no fillers were to be stripped in the wrappers. The purpose of this provision was manifest. To place fillers in the same bale with wrappers and then mark the whole bale "Wrappers," would be to require the purchaser to pay for the fillers more than three times the price which had been agreed upon for that class of tobacco by the parties. The evidence established that at the time the contract was made the tobacco was hanging on the poles in plaintiff's barn, in the process of drying, before it could be ready for delivery under the provisions of the contract it had to be completely cured, the leaf stripped from the stem, properly assorted and baled; all these things the plaintiff was required to do under the terms of his contract. The defendant did not covenant to pay for any specific quantity of tobacco nor for the entire crop at a fixed rate per pound. What he did agree to pay for was the wrappers and fillers in the entire crop, at the rates specified in the contract, when well assorted, free from damage

and delivered in good merchantable order at his warehouse. The contract was, in these respects, executory and the burden was upon the plaintiff to establish by evidence that the tobacco which he tendered was well assorted and in good merchantable order. The fact that the plaintiff delivered one lot of tobacco, which was accepted and paid for, did not abrogate the covenants of the contract as to the tobacco which he subsequently tendered. Whether the contract was entire or several is a question which it is not necessary to determine, the plaintiff was in either case bound to perform it according to its terms before he could recover for that part of the tobacco in question. The case as presented at the trial did not involve an attempt upon the part of the defendant to rescind the contract, he was only insisting upon its being performed according to its terms. The question submitted to the jury, under sufficient evidence, was whether the plaintiff had performed, not whether the defendant was relieved from performance of his covenants. The contract being executory and the plaintiff being bound to put the property in a certain condition before delivering it, the title did not pass at the time the contract was made. The defendant agreed to pay for the property after the plaintiff had put it into a specified condition and the former could only have become bound to accept and pay for the tobacco after it had been put in that condition. He was not required to accept what he had never agreed to buy or pay for. Whether the tobacco was in the condition required by the contract was, under the evidence, a question of fact for the jury, and that question was submitted under instructions by the court below of which the plaintiff has no just cause to complain. The first five specifications of error are dismissed.

The question of fact upon which the jury was required to pass was the condition of the tobacco at the time the plaintiff tendered it to the defendant. It was, therefore, competent for the defendant to establish by the testimony of witnesses, who had experience in such matters and had actually examined the tobacco, what its condition was at or about the time of the alleged delivery, and it was not necessary that the plaintiff should have had notice that such witnesses were

to make such examination. The 6th, 7th, 8th, 9th, 10th, 13th and 14th specifications of error are overruled. The condition of the tobacco delivered on January 18, 1907, which had been accepted and paid for was not in issue in this proceeding and testimony upon that question would have been irrelevant. The eleventh specification of error is dismissed. The evidence which established that the plaintiff had been notified by the defendant to remove the tobacco in question from the warehouse of the latter was properly admitted, and the fifteenth specification of error is without merit. The defendant could not be called upon to accept tobacco which was not of the character specified in his contract and, therefore, evidence of the market value of the tobacco tendered, which was not what the defendant had agreed to buy, was not admissible. The sixteenth specification of error is dismissed.

The judgment is affirmed.