## WAGGONER REFINING CO. v. BELL OIL & GAS CO.

No. 16330—Opinion Filed March 16, 1926.

**1. Sales—Refusal of Buyer to Accept—Right of Seller to Damages.**

Before a seller may maintain an action for damages for the breach of a contract on the part of the purchaser, he must allege and prove an offer to deliver on his part and a refusal to accept on the part of the purchaser, and that he has at all times stood, not only able, but willing and ready to deliver the property in keeping with the terms of the contract of sale.

**2. Same—When Buyer Excused from Obligation.**

When it is made to appear that a seller does not intend to abide by the terms of the contract of sale in a material particular, the purchaser will be excused from his obligation to perform.

**3. Same—Contract Enforced as Made.**

Courts are not permitted to speculate as to whether a term employed in a mercantile contract is material, but must give effect to every term of the contract which the parties have chosen for themselves.

(Syllabus by Jarman, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Tulsa County; Z. I. J. Holt, Judge.

Action by the Waggoner Refining Company against the Bell Oil & Gas Company. Judgment for defendant, and plaintiff brings error. Affirmed.

Yarbrough & Tipton and West, Gibson, Sherman, Davidson & Hull, for plaintiff in error.

O'Meara & Silverman, for defendant in error.

Opinion by JARMAN, C. This was an action by the Waggoner Refining Company, a corporation, plaintiff below, to recover damages from the Bell Oil & Gas Company, a corporation, defendant below, for failure to receive and pay for 30 cars of gasoline pursuant to the terms of a written contract between the parties. Verdict and judgment were for the defendant, from which the plaintiff has appealed.

The contract, forming the basis of this action, consists of a written purchase order submitted on June 4, 1923, by the defendant to the plaintiff for the 30 cars of gasoline and a telegram of the plaintiff accepting the terms of the purchase order on June 6, 1923. Said original purchase order recites that the defendant agreed to purchase 20 tank cars of 56-58, 450 E-P, straight run gasoline at 11½ cents per gallon and 10 tank cars of 58-60 straight run, New Navy gasoline at 12½ cents per gallon, all of which was to be delivered f.o.b. Electra, Tex., during the last half of June, and said purchase order contained the additional provision, "Show Bell Oil & Gas Company as shipper," and was signed by the Bell Oil & Gas Company, and was confirmed and the terms and provisions of said order were accepted without any modifications or conditions by the plaintiff by telegram sent and delivered to the defendant on June 6, 1923. On June 14, 1923, the defendant wrote to the plaintiff asking to be allowed to ship the gasoline during the month of July for the reason that its customer had advised that he was crowded and would not be in position to handle the gasoline, and the defendant also sought, in said letter, to have the plaintiff change the order to read "30 cars 56-58 instead of 10 cars of Navy." The plaintiff replied to this letter on June 18, 1923, advising that it would be impossible to extend the time of shipment through July, but stated that the order could be changed to make all 30 cars 56-58, and insisted the gasoline must be shipped during the last half of June as per contract. Thereafter numerous telegrams and letters were exchanged and telephone conversations were

had between the parties with reference to a modification of the terms of the original contract and the extension of the time for shipment. As a defense to the plaintiff's action, the defendant alleged that before the time within which to perform the contract expired the plaintiff and the defendant mutually agreed to amend the original contract to show that the defendant purchased of the plaintiff "thirty (30) tank cars of 58-60 straight run New Navy, water white, sweet odor gasoline, instead of the commodity and quantity stated in the original purchase order," and alleged, further, that the price for said 30 tank cars of gasoline should be 12 cents per gallon instead of the price set forth in the original purchase order, and that the time of shipment was extended to and including the 20th day of July, 1923. On July 3, 1923, on account of the defendant having failed to give shipping instructions and to take the gasoline pursuant to the terms of the original contract, the plaintiff sold 24 cars of the gasoline on the market and thereafter sold the remaining six cars at the prevailing market price, which was less than the price the defendant contracted to purchase the gasoline at. The plaintiff sought to recover as its measure of damages the difference between the contract price and the sale price of said gasoline, which amounted to $6,400.

There are many propositions presented and discussed by the parties, but, in our view of the case, the appeal may be disposed of on a very simple proposition. It is elementary that, before a seller may maintain an action for the breach of a contract of sale of personal property, he must allege and prove an unconditional offer to deliver on his part and a refusal to accept on the part of the purchaser, and that he was not only able, but that he has at all times stood willing and ready to deliver the property in keeping with the terms of the contract of sale. 35 Cyc. 168, 169.

One of the terms and provisions of the contract in question was that the defendant was to be shown as shipper of all gasoline furnished by the plaintiff under the contract. Under the foregoing rule, before the plaintiff would be entitled to recover damages for a breach of the contract on the part of the defendant, it was necessary that the plaintiff prove that it stood, not only able, but willing and ready to show the defendant, Bell Oil Company, as shipper of all gasoline furnished by the plaintiff under the contract.

On June 30th, prior to the expiration of

the time given the defendant in which to place shipping instructions for the gasoline as provided by the terms of the contract, and after considerable negotiations had been indulged in by the defendant to procure an extension of the time and a modification of certain terms of the contract, the defendant wired the plaintiff to ship 10 cars of gasoline to the Petroleum Refining Company in care of the Refiners Oil Company, Cincinnati, Ohio, and said telegram concluded with the statement, "Show us as shippers. * * *" On July 1st, the plaintiff wired the Refiners Oil Company, stating that it had received an order from the defendant to ship to the Refiners Oil Company 10 cars of gasoline and to advise by wire if "58-60, New Navy specifications," being the specifications set forth in the order submitted by the defendant, would be satisfactory. On July 2nd, the plaintiff wired to the defendant advising that it would ship the 10 cars of gasoline to the Petroleum Refining Company as per specifications contained in the order of the defendant and would get out the remainder of the cars as fast as possible. On the same day, the plaintiff sent the defendant another telegram stating:

"We will not ship anyone and show anyone. else but ourselves as shippers unless the shipments are made shipper's order notify you will remember that we refused to do this on the first contract made with you we will be glad to ship on open bill of lading to you or your customers but must show ourselves as shippers in order to protect ourselves or we will make shipment as you request provided your Tulsa bank wires us guarantee payment draft with bills of lading attached."

On the same day, July 2nd, the plaintiff wrote a letter to the defendant enclosing a copy of the last telegram, above quoted, and stated:

"We regret very much that we cannot comply with your request, but the offices of the company will not permit us to do this. We went into this fully with you on the first contract with you, and we see no reason why you should insist on this now."

On July 4th, the plaintiff wired the defendant that, on account of not receiving a reply to its telegram of July 2nd, being the one in which plaintiff refused to show the defendant as shipper as requested in the shipping instructions wired by defendant on June 30th, it had sold 24 cars of gasoline on July 3rd, and that the remainder of the 30 cars would be sold as fast as possible and that the difference in the sale price and the contract price would be charged to the account of the defendant. The only reason

the plaintiff did not furnish the gasoline in keeping with the shipping instructions furnished by the defendant in its telegram of June 30th was that the plaintiff refused to ship the same and show the defendant as shipper.

With reference to the plaintiff's attitude and intention as to showing the defendant as shipper, Mr. Kolp, general manager of the plaintiff company, who personally transacted the business with the defendant out of which this lawsuit grew, testified as follows:

"Q. Was it your intention at any time since June 4, 1923, to ship any part of that commodity and show the Bell Oil & Gas Company as shipper? A. No, sir; we would not show them as the shipper."

It is clear, therefore, that, notwithstanding any default that may have been made by the defendant in refusing to carry out its part of the contract, the plaintiff cannot recover, for the reason that it has shown that it never intended, after the contract was made, to comply with the contract by showing the defendant as shipper, and, therefore, the plaintiff had never been willing and ready to execute its part of the contract. It is as important that a seller be willing and ready to perform as it is for him to be able to perform the terms and provisions of his contract of sale. The principle announced in the third paragraph of the syllabus of the case of Haynes v. Brown, 18 Okla. 389, 89 Pac. 1124, is applicable here, and is as follows:

"Where there has not been an actual delivery of personal property, the seller, in order to maintain an action for the purchase price, must both aver and prove an offer to deliver and refusal to accept, and also that he is able, willing, and ready to deliver said property at all times, or allege some valid excuse for inability to keep good his offer to deliver."

Counsel for plaintiff insist that, although its witness, Mr. Kolp, testified that the plaintiff never intended, at any time after the contract was entered into, to ship any part of the gasoline and to show the defendant as shipper, yet all of the negotiations had between the parties showed unmistakably that the plaintiff intended to perform its part of the contract fully according to the terms thereof. While the attitude of the plaintiff at all times after the execution of the contract was that it stood ready to deliver the 30 cars of gasoline and insisted on the defendant filing shipping instructions therefor, yet the record does not disclose that the plaintiff at any time offered to ship the gasoline or any part thereof and show

the defendant as shipper. It is our duty to reconcile the evidence and it can be reconciled only on one theory, and that is that, while the plaintiff offered and stood ready to deliver the gasoline, yet it was on the theory and condition that the plaintiff was to be shown as shipper. The telegram of the plaintiff of July 2nd, wherein it called the attention of the defendant to the fact that the plaintiff had refused to show the defendant as shipper on the first contract, and the letter written on the same date to the same effect, show that the plaintiff, during the time given under the contract to ship the gasoline, had declined or refused to show the defendant as shipper, and, therefore, failed and refused to perform the contract according to its terms.

If it could be said, however, that the plaintiff, during the term of the contract, did not refuse to ship the gasoline and show the defendant as shipper, it must be conceded, under the undisputed evidence, that the plaintiff never intended, after the execution of the contract, to show the defendant as shipper; and, under that view of the case, the principle involved in the rule announced in Williston on Contracts, sec. 875, is applicable:

"Any conduct of the party to a contract * * * that shows that he does not intend to abide by the terms of the contract in a material particular will excuse the party from his obligation to perform."

Plaintiff is not in a position to insist that the contract was not breached on its part in a material particular by its refusal to show the defendant as shipper. The plaintiff evidently considered that portion of the contract as material, because the only reason it failed or refused to ship the gasoline as per shipping instructions, furnished in the telegram of the defendant on June 30th, was that it declined to ship the gasoline and show the defendant as shipper. This is what is denominated as a mercantile contract, and courts are not permitted to speculate as to the meaning of terms employed in such contract, nor to attempt to determine why certain terms are used; and the courts are bound to give effect to the terms which the parties have chosen for themselves. Filley v. Pope, 115 U. S. 213, 29 L. Ed. 732. As said by the court in the case of National Bank of Commerce v. Lamborn et al. (C. C. A.) 2 F. (2d) 23, 36 A. L. R. 509:

"In construing mercantile contracts, courts must give effect to every term, and are not at liberty to speculate whether the parties did or did not attach importance thereto."

Therefore, the intention of the plaintiff

not to perform or its refusal to perform the contract so as to show the defendant as shipper precludes the plaintiff from recovering damages for a breach of the contract by the defendant.

For the reasons given, the judgment of the trial court is affirmed.

By the Court: It is so ordered.

Note.—See under (1) 35 Cyc. pp. 168, 169, 587, 589.   (2) 35 Cyc. p. 257.   (3) 13 C. J. p. 520 § 481; 35 Cyc. p. 96.