## VALLEY REFINING CO. v. ROCK ISLAND REFINING CO.

No. 21790.   Jan. 30, 1934.

Jones & Clift and Milburn E. Nutt (R. Wayne Frank, of counsel), for plaintiff in error.

Brown & Cund, for defendant in error.

BUSBY, J.   In February of 1927, Wilson Brothers Refining Company and the Rock Island Refining Company entered into a contract whereby the former agreed to sell and the latter to purchase 35 tank cars (8,000-gallon capacity) of gasoline at an agreed price of $7\frac{1}{2}$ cents per gallon, shipment to be made at approximately a car a day.

This agreement was evidenced by written communications between the two companies. The quality of gasoline was specifically agreed upon and described in the order.

When the purchasing company had received, accepted and paid for 15 cars of gasoline, it notified the selling company to cancel the order, and that it would not receive any of the remaining 20 cars for the reason that the first 15 were defective in quality.

By permission of the Secretary of State, Wilson Brothers Refining Company changed its corporate name to Valley Refining Company. The Valley Refining Company, as plaintiff, commenced this action in the district court of Stephens county against the Rock Island Refining Company, as defendant, January 4, 1928, seeking to recover the sum of $2,136 for breach of contract based upon the alleged wrongful cancellation of the order and the refusal to receive the remaining 20 cars of gasoline.

In its answer the defendant admitted its refusal to take the gasoline in question. In justification of this refusal defendant alleged that the gasoline shipped in the first 15 cars was defective in quality and did not meet the specifications in the agreement between the parties. Defendant also averred that upon discovery of the defective character of the gasoline during the course of the shipment of the 15 cars, it complained to the plaintiff that the product being shipped was deficient in quality, and demanded that in future shipments the specifications of the contract must be complied with. Defendant pleaded that, notwithstanding the above stated complaint and demand, the plaintiff continued to ship gasoline of a defective quality, whereupon the defendant, after receiving in all 15 cars, canceled the order.

The defendant also filed with its answer a cross-petition, the details of which will not be discussed, for the reason that no cross-

appeal has been filed in this case by the defendant from the adverse decision of the trial court thereon.

The reply of the plaintiff was in the nature of a general denial. On the trial of the case the evidence of the defendant reasonably tended to support the allegations contained in its answer. It appears from the evidence of defendant that the gasoline in question was contracted for by the plaintiff in contemplation of resale and was resold to Swan-Finch Oil Corporation, and at the request of the latter was shipped to various points in the north and northeast portion of the United States. Upon arrival at destination the gasoline was found to be defective in quality. The Swan-Finch Corporation began complaining of the character of the gasoline as soon as the same began to arrive. The defendant in turn complained to the plaintiff and demanded an observance of the terms of the contract concerning the quality of the gasoline, advising that unless the provisions of the agreement were observed the order would be canceled. Inferior gasoline was subsequently received, and the order was then canceled.

At the conclusion of the evidence the trial court entered its judgment in favor of the defendant on the issues tendered by the petition and answer and denying relief to the defendant on its cross-petition.

This appeal is perfected by the plaintiff in the trial court. The parties appear in this court in the same order as in the trial court below. The general judgment in favor of the defendant is deemed to include a special finding upon each disputed question of fact essential to support the judgment. We have, therefore, in stating the facts presented by the record disregarded conflicts and treated the evidence most favorable to the defendant as true.

The question presented in this appeal is whether the defendant, after accepting the first 15 cars of gasoline, could refuse to accept the remaining 20 on the theory that the first 15 were defective in quality. The plaintiff contends that by accepting the first 15 cars, the defendant waived defects in quality and could not by reason of such waiver cancel the contract for defects in quality of the merchandise delivered and accepted. The plaintiff devotes some time in its brief in discussing the distinction between a condition and a warranty in a contract for sale. It urges that the provision of the contract with reference to the quality of the gasoline in the case at bar should be classified as a condition as distinguished from a warranty. If this were an action by the purchaser to recover a money judgment by reason of the defective quality of the commodity shipped in the first 15 cars, the distinction would be of controlling importance, since an action on a warranty is generally held to survive acceptance. Wallace v. L. D. Clark & Son, 74 Okla. 208, 174 P. 557, 21 A. L. R. 361. Whereas, a failure to comply with a condition has generally been held to be waived by acceptance of the tendered goods. Brown v. Baird & McKinnis, 5 Okla. 133, 48 P. 180; Brown v. Davidson, 42 Okla. 598, 142 P. 387; Tally v. Harrison, 60 Okla. 110, 159 P. 366.

This case, however, does not present a situation in which the distinction between a warranty and a condition is of controlling importance. It does not involve the right of a purchaser to recover a money judgment for defect in quality of merchandise previously accepted by reason of the defective quality thereof. On the contrary, it involves the right of a purchaser to refuse future successive deliveries under a contract by reason of defects in quality of prior deliveries under the same contract.

Regardless of whether the terms of the contract describing the quality and kind of the merchandise are classified as a warranty or as a condition, the purchaser may rightly expect and demand that the seller comply with the provisions of the agreement. As was said by this court in Brown v. Baird, supra:

"It may be stated as an indisputable proposition of law that if a merchant contracts to deliver a quantity of goods or materials of a certain kind, quality, or grade, he will be bound by his contract."

The purchaser may refuse to accept goods that do not meet the provisions of the contract regardless of whether such provisions be treated as a warranty or a condition. Thus, as in the case at bar, where the vendor by the terms of a contract is bound to make successive deliveries of quantities of a given commodity, the acceptance of an installment inferior in quality to that required by the contract does not preclude the buyer from rejecting a later installment of goods which are below the standard of quality called for by the contract of sale. Coburn v. California Portland Cement Co., 144 Cal. 81, 77 P. 771; Cook v. Brandeis, 3 Met. (Ky.) 555; American Paper Pail, etc., Co. v. Oakes, 64 Mo. App. 235; Norfolk Beet

Sugar Co. v. Berger (Neb.) 95 N. W. 336; Hardt v. Western Electric Co., 84 App. Div. 249, 82 N. Y. S. 835; Robert Gair Co. v. Lyon, 52 Misc. 139, 101 N. Y. S. 787; Freeman v. Skinner, 31 N. C. 32; Smith v. Levy, 37 Pa. Super. Ct. 551; Pacific Coast Elevator Co. v. Bravinder, 14 Wash. 315, 44 P. 544; Lewis v. Barre, 14 Manitoba, 32.

Similarly it is generally held that where the first of several successive deliveries of installments of an article sold are defective in quality or quantity, the purchaser may by prompt notice of his refusal to further perform relieve himself of further liability for subsequent deliveries. McDonald v. Kansas City Bolt & Nut Co., 149 Fed. 360, 79 C. C. A. 298; 8 L. R. A. (N. S.) 1110; Ungerer & Co. v. Louis Maull Cheese & Fish Co. (Mo. App.) 134 S. W. 58. On the other hand, an acceptance of the early installments' which are defective in quality or quantity without prompt complaint or objection is frequently held to constitute a waiver of the quality of the merchandise and to preclude the purchaser from asserting a right to cancel the contract by reason thereof. McDonald v. Kansas City Bolt & Nut Co., supra. In this case, if the defendant is to be precluded from asserting a right to cancel the contract by reason of the prior default of the plaintiff in furnishing gasoline of a defective quality, it must be upon the theory of waiver by acceptance. Waiver has been defined as an intentional relinquishment of a known right. Smith v. Minn. Threshing Mach. Co., 89 Okla. 156, 214 P. 178. In discussing the particular phase of the law under consideration, Williston on Sales (2d Ed.) par. 1271, quotes with approval the language of the Supreme Court of Maine in the case of Morse v. Moore, 83 Me. 473, 481, 22 Atl. 362, 13 L. R. A. 224, 23 Am. St. Rep. 783, as follows:

"If the goods be accepted without objection at the time or within a reasonable time afterward, the evidence of waiver, unless explained, might be considered conclusive. But if, on the other hand, objection is made at the time, and the vendor notified of the defects, and the defects are material, the inference of waiver would be altogether repelled."

It thus appears that prompt complaint of defects in quality of merchandise contracted for destroys the force and effect of acceptance as a waiver of such defect, especially as to future installments under a contract for successive deliveries. United States Printing Co. v. H. O. Wilbur Co., 98 Ill. App. 20. In discussing the problems involved, both of the parties involved in the case at bar refer to the text in 24 R.

C. L. par. 564, p. 284, article on Sales, as follows:

"If the buyer accepts delivery of and retains an installment which is defective, it is generally held that he cannot on account of the defects in the delivery repudiate the further performance of the contract and refuse to accept other deliveries. Thus, if the default of the seller in the delivery of an installment is in the quality of the commodity delivered, and the installment has been accepted and retained by the buyer, the latter cannot for such reason alone repudiate the contract and refuse to accept further delivery of installments of the required quality. It has also been expressly held that, even though the seller in prior deliveries was guilty of fraud in substituting an inferior grade, this would not justify the buyer in his refusal to take subsequent installments. It seems, however, that if the conduct and acts of the 'seller are such as to justify a reasonable belief on the part of the buyer that the seller intends thereafter to continue to tender or deliver a quality inferior to that required by the contract, the buyer may terminate the contract for such prior defaults."

The case at bar seems to fall squarely within the principle announced in the underscored portion of the text above quoted, and the principle therein recognized has been previously approved by this court in the case of Waggoner Refining Co. v. Bell Oil & Gas Co., 117 Okla. 55, 244 P. 756, in which it is said in paragraph 2 of the syllabus:

"When it is made to appear that a seller does not intend to abide by the terms of the contract of sale in a material particular, the purchaser will be excused from his obligation to perform."

Obviously, the intention of the seller not to abide by the terms of the contract may be manifested by acts and deeds as well as words. In the case of Grafeman Dairy Co. v. St. Louis Dairy Co. (Mo. App.) 70 S. W. 390, the court, in approving the action of the purchaser in canceling a contract for successive deliveries of milk by reason of the defective quality of prior deliveries, said:

"In such circumstances, it is the party who furnishes the inferior goods who first breaches the contract; and, when he manifests a determination to continue these breaches from day to day, the other party ought to be at liberty to rescind the contract."

Applying the principles announced in the foregoing authorities to the case at bar, it seems that when the purchaser, defendant in this case, notified the seller, the plaintiff,

that the quality of the gasoline being shipped did not comply with the terms and provisions of the contract between the parties, and warned the seller that in event future deliveries of inferior quality were shipped the contract would be canceled, an intention was manifested on the part of the purchaser to demand a strict observance of the terms and provisions of the contract of the parties, and when the seller in completing the deliveries of the remainder of the 15 cars, continued to furnish goods of defective quality, the purchaser was justified in presuming that the remaining 20 cars called for by the contract would likewise be defective in quality, and was justified in canceling and terminating the contract by reason of the continued failure of the plaintiff to observe its terms and conditions. The trial court so held, and the decision will be affirmed.

RILEY, C. J., CULLISON, V. C. J., and SWINDALL and OSBORN, JJ., concur.